[S.F. No. 23999. Nov. 29, 1979.]

VEGOD CORPORATION et al.,
Plaintiffs and Appellants, v.
AMERICAN BROADCASTING COMPANIES,
INC., et al., Defendants and Respondents.

### COUNSEL

Hoberg, Finger, Brown, Carlson, Cox & Molligan, Peter N. Molligan and James Geagan for Plaintiffs and Appellants.

Lillick, McHose & Charles, Robert Fremlin, Robert Kavanaugh, Gail Heckemeyer, Tolpegin & Imai and Andre V. Tolpegin for Defendants and Respondents.

### OPINION

**CLARK, J.**—In this defamation action the trial court ruled that plaintiffs are "public figures" within the meaning of *Gertz* v. *Robert Welch, Inc.* (1974) 418 U.S. 323 [41 L.Ed.2d 789, 94 S.Ct. 2997] and that actual malice is an essential element of plaintiffs' cause of action. Plaintiffs conceded they are unable to prove defendants acted with actual malice within the holding of *New York Times Co.* v. *Sullivan* (1964) 376 U.S. 254 [11 L.Ed.2d 686, 84 S.Ct. 710, 95 A.L.R.2d 1412]. Judgment was granted defendants, and plaintiffs appeal. We reverse.

Plaintiff corporations are engaged in closing out stores that have failed or are going out of business. Plaintiffs arranged to conduct a "closing out sale" for the City of Paris, a respected San Francisco department store, opened in 1850 and described by the trial court as a "landmark store." When the store's end appeared imminent in 1972, it was widely reported by the news media. Bargains were widely advertised. Plaintiffs also rented space to concessionaires who brought in outside merchandise according to their own practices and procedures.

A Better Business Bureau spokesman advised a KGO-TV news reporter that plaintiffs were selling inferior merchandise at inflated

prices. KGO-TV notified plaintiffs of its intention to broadcast the story. One broadcast stated: "The City of Paris has always been a trusted San Francisco institution with a well-earned reputation for honesty a store can only get through many years of treating the public fairly but the Better Business Bureau has revealed exclusively to Newscene that it is not the trusted City of Paris management that's running the close-out campaign. The watchdog agency says two outside companies, Vega [*sic*] Corporation and Western Institute of Retailers [*sic*], have been brought in to handle the closeout, a closeout the Better Business Bureau says has deceived the public that trusts the name City of Paris and promises bargains that are not really bargains at all."

In *New York Times Co.* v. *Sullivan, supra,* 376 U.S. 254, 269 et seq. [11 L.Ed.2d 686, 700 et seq.], the Supreme Court determined that public officials may not recover damages for defamation unless they show defendant acted with actual malice. While recognizing the First Amendment does not protect libelous statements, the court reasoned that erroneous statements are inevitable in free debate and must be protected if we are to maintain free discussion. Unless a privilege to err absent malice is recognized, grave danger exists that requiring publishers to guarantee accuracy will result in unreasonable self-censorship. "[W]ould-be critics of official conduct may be deterred from voicing their criticism, even though it is believed to be true and even though it is in fact true, because of doubt whether it can be proved in court or fear of the expense of having to do so." (376 U.S. at p. 279 [11 L.Ed.2d at p. 706].) The court defined "actual malice" as making a statement "with knowledge that it was false or with reckless disregard of whether it was false or not." (376 U.S. at pp. 279-280 [11 L.Ed.2d at p. 706].)

Three years later in *Curtis Publishing Co.* v. *Butts* (1967) 388 U.S. 130, 155 [18 L.Ed.2d 1094, 1111, 87 S.Ct. 1975], the court held that public figures—like public officials—must prove actual malice to recover for defamation. Although the court did not give us an encompassing definition of public figure, it held the plaintiffs in the two cases before it met the public figure test. In one, the plaintiff was an athletic director of a state university who was employed by a private corporation rather than the state. The libelous statement was a report covering an alleged conversation between him and a coach of another university and the ensuing football game between the two universities. Plaintiff in the second was a retired Army officer who had "thrust himself into the 'vortex' of the controversy" over admission of a black to a state university, and the libelous statement related to his conduct with respect to a

riot at the university. (388 U.S. at pp. 140-142, 146 [18 L.Ed.2d at pp. 1102-1104, 1106].)

The Supreme Court again sought to strike a balance between vindication of honor through defamation law on one side and free speech and press protected by the First Amendment on the other in *Gertz v. Robert Welch, Inc., supra,* 418 U.S. 323. The court recognized that, while false statements of fact enjoy no constitutional protection, permitting strict liability for false statement impairs First Amendment liberties by deterring speech that matters. The court also recognized the state has a legitimate interest in protecting reputation. The court defined public figures: "In some instances an individual may achieve such pervasive fame or notoriety that he becomes a public figure for all purposes and in all contexts. More commonly, an individual voluntarily injects himself or is drawn into a particular public controversy and thereby becomes a public figure for a limited range of issues. In either case such persons assume special prominence in the resolution of public questions." (*Id.,* at p. 351 [41 L.Ed.2d at p. 812].)

Distinguishing between private and public figure the court reasoned that public figures ordinarily will have significantly greater access to the media to contradict lie and error than will private individuals, and that those classed as public have voluntarily thrust themselves to the fore, inviting attention and comment and exposing themselves to increased risk of defamatory falsehood. Private persons by contrast have not undertaken an "influential role in ordering society.'" (418 U.S. at pp. 344-345 [41 L.Ed.2d at p. 808].)

Gertz was an attorney employed to bring a wrongful death action by the family of a person killed by a police officer convicted of second degree murder. The alleged libelous article asserted that the conviction was a frameup, part of a Communist conspiracy, and it claimed that Gertz had Communist connections.

Recognizing that Gertz had been active in community and professional affairs, the court stated: "We would not lightly assume that a citizen's participation in community and professional affairs rendered him a public figure for all purposes. Absent clear evidence of general fame or notoriety in the community, and pervasive involvement in the affairs of society, an individual should not be deemed a public personality for all aspects of his life. It is preferable to reduce the public-figure question to a more meaningful context by looking to the nature and ex-

tent of an individual's participation in the particular controversy giving rise to the defamation.

"In this context it is plain that petitioner was not a public figure. He played a minimum role at the coroner's inquest, and his participation related solely to his representation of a private client. He took no part in the criminal prosecution of Officer Nuccio. Moreover, he never discussed either the criminal or civil litigation with the press and was never quoted as having done so. He plainly did not thrust himself into the vortex of this public issue, nor did he engage the public's attention in an attempt to influence its outcome. We are persuaded that the trial court did not err in refusing to characterize petitioner as a public figure for the purpose of this litigation." (418 U.S. at p. 352 [41 L.Ed.2d at p. 812].)

■ Although private persons are not necessarily required to prove actual malice to recover for defamation, states may not impose liability without fault. In such cases, the state may determine the fault standard to apply. (418 U.S. at p. 347 [41 L.Ed.2d at pp. 809-810].)

In *Time Inc.* v. *Firestone* (1976) 424 U.S. 448 [47 L.Ed.2d 154, 96 S.Ct. 958], the court again considered the meaning of the term "public figure." Time magazine erroneously reported that a divorce was granted to Mr. Firestone on grounds of extreme cruelty and adultery. Time argued that Mrs. Firestone was a "public figure" since the 17-month trial attracted national attention, eliciting 88 articles in Miami and Palm Beach newspapers. Mrs. Firestone had also given several press conferences and was a prominent member of Palm Beach society.

Rejecting Time's argument the court stated: "[P]etitioner seeks to equate 'public controversy' with all controversies of interest to the public. Were we to accept this reasoning, we would reinstate the doctrine advanced in the plurality opinion in *Rosenbloom* v. *Metromedia, Inc.*, 403 U.S. 29 [91 S.Ct. 1811, 29 L.Ed.2d 296] (1971), which concluded that the *New York Times* privilege should be extended to falsehoods defamatory of private persons whenever the statements concern matters of general or public interest. In *Gertz,* however, the Court repudiated this position, stating that 'extension of the *New York Times* test proposed by the *Rosenbloom* plurality would abridge [a] legitimate state interest to a degree that we find unacceptable.' 418 U.S., at 346 [94 S.Ct., at 3010]. [¶] Dissolution of a marriage through judicial proceedings is not the sort of 'public controversy' referred to in *Gertz,* even though the

marital difficulties of extremely wealthy individuals may be of interest to some portion of the reading public. Nor did respondent freely choose to publicize issues as to the propriety of her married life. She was compelled to go to court by the State in order to obtain legal release from the bonds of matrimony. We have said that in such an instance '[r]esort to the judicial process . . . is no more voluntary in a realistic sense than that of the defendant called upon to defend his interests in court.' (*Boddie* v. *Connecticut*, 401 U.S. 371, 376-377 [91 S.Ct. 780, 785, 28 L.Ed.2d 113] (1971). Her actions, both in instituting the litigation and in its conduct, were quite different from those of General Walker in *Curtis Publishing Co., supra.* She assumed no 'special prominence in the resolution of public questions.' *Gertz, supra,* 418 U.S., at 351 [94 S.Ct., at 3013]. We hold respondent was not a 'public figure' for the purpose of determining the constitutional protection afforded petitioner's report of the factual and legal basis for her divorce." (424 U.S. at pp. 454-455; fn. omitted [47 L.Ed.2d at p. 163].)

■ Defendants argue that the demise and closing out sale of the City of Paris were matters of public controversy because it was a "landmark store." Even assuming the venerable store's planned destruction created a public controversy, those conducting the subsequent closeout sale cannot be said to have thrown themselves into the vortex of that controversy. It does not appear that plaintiffs urged City of Paris publicly or otherwise to terminate business or to destroy the "landmark." Merely doing business with parties to a public controversy does not elevate one to public figure status.

Defendants also urge that by selling goods to the public and by advertising the sale plaintiffs became public figures. In *Gertz* the court in concluding that he was not a public figure pointed out that Mr. Gertz had never discussed the civil or criminal litigation with the press. In *Firestone* the court pointed out that Mrs. Firestone did not seek publicity on the propriety of her marital conduct.

While availability of goods for sale and their quality are matters of public interest, this is not the test. The public interest test was expressly rejected in *Gertz* (418 U.S. at p. 346 [41 L.Ed.2d at p. 809]), and in *Firestone* (424 U.S. at pp. 455-456 [47 L.Ed.2d at pp. 163-164]), in favor of the public controversy test. (See also *Hutchinson* v. *Proxmire* (1979) 443 U.S. 111 [61 L.Ed.2d 411, 99 S.Ct. 2675].)

■ Criticism of commercial conduct does not deserve the special protection of the actual malice test. Balancing one individual's limited First Amendment interest against another's reputation interest (*Herbert v. Lando* (1979) 441 U.S. 153, 169, [60 L.Ed.2d 115, 129, 99 S.Ct. 1635]), we conclude that a person in the business world advertising his wares does not necessarily become part of an existing public controversy. It follows those assuming the role of business practice critic do not acquire the First Amendment privilege to denigrate such entrepreneur.[1]

Pointing out that *Gertz* and *Firestone* relied on individual interests in reputation, one federal district court has held that in defamation actions corporations must prove malice in fact whenever the defamatory statement relates to a matter of public interest. (*Martin Marietta Corp. v. Evening Star Newspaper* (D.D.C. 1976) 417 F.Supp. 947, 954-956.) However, two other federal district courts have rejected the proposed distinction. (*Reliance Insurance Co. v. Barron's* (S.D.N.Y. 1977) 442 F.Supp. 1341, 1347-1348; *Trans World Accounts, Inc. v. Associated Press* (N.D.Cal. 1977) 425 F.Supp. 814, 819.)

■ In California, a corporation's right and redress against defamation is well established. (*DiGiorgio Fruit Corp. v. American Federation of Labor* (1963) 215 Cal.App.2d 560 [30 Cal.Rptr. 350]; *Daniels v. Sanitarium Assoc., Inc.* (1963) 59 Cal.2d 602, 609 [30 Cal.Rptr. 828, 381 P.2d 652]; *Hotel and Restaurant Employees Union v. Anaheim Operating, Inc.* (1978) 82 Cal.App.3d 737, 752 [147 Cal.Rptr. 510]; *Triton Insurance Underwriters, Inc. v. National Chiropractic Ins. Co.* (1965) 232 Cal.App.2d 829, 832 [43 Cal.Rptr. 504]; see also, Civ. Code, § 45; Rest.2d Torts, § 561.)

Rejecting the distinction between individuals and corporations in *Martin Marietta,* the court in *Trans World Accounts, Inc. v. Associated Press, supra,* 425 F.Supp. 814, 819, reasoned: "[A]t least in this case governed by California substantive law, there is no distinction between the protectible interest in reputation of corporations and individuals and the former as much as the latter may recover special, general and punitive damages. (*DiGiorgio Fruit Corp. v. American Federation of Labor,* 215 Cal.App.2d 560, 30 Cal.Rptr. 350, 355-356 (1963); compare *Martin Marietta Corp. v. Evening Star,* above, at 955. [¶] While it is true

---

[1] Because plaintiffs' stipulation related to the First Amendment privilege under *New York Times Co. v. Sullivan, supra,* 376 U.S. 254, we consider only that federal privilege and do not express any view as to whether the statements were privileged under California law.

that the Supreme Court's opinions in these cases have been cast in terms of protecting the rights of individuals, it is also true that the line between the interests of natural persons and corporations is frequently fuzzy and ill-defined. Various legal considerations have long led to the incorporation of businesses that are in economic reality but individual proprietorships or partnerships. On the other hand, very large business enterprises may be conducted as individual proprietorships or partnerships. For that additional reason, it seems that for purposes of applying the First Amendment to defamation claims, the distinction between corporations and individuals is one without a difference."

The judgment is reversed.

Tobriner, J., Mosk, J., Richardson, J., and Manuel, J., concurred.

NEWMAN, J., Dissenting.—Citing *New York Times Co.* v. *Sullivan,* 376 U.S. 254 at page 269 et seq. [11 L.Ed.2d 686, at p. 700 et seq., 84 S.Ct. 710, 95 A.L.R.2d 1412], the majority opinion concludes (*ante* p. 766): "[E]rroneous statements are inevitable in free debate and must be protected if we are to maintain free discussion. Unless a privilege to err absent malice is recognized, grave danger exists that requiring publishers to guarantee accuracy will result in unreasonable self-censorship."

The California Constitution ensures that those words apply here. Article I, section 2 commands that "[e]very person may freely speak, write and publish his or her sentiments on all subjects, being responsible for the abuse of this right."

Was there an abuse of that right here? The majority so conclude, arguing (1) that the facts show no public controversy, and (2) that plaintiffs had not attained "public figure status." I disagree. I think it is clear that inner-city "closeout sales" in our era do inspire controversial concerns; and the "landmark" character of the building here merely helped to publicize those concerns and make them more newsworthy. Plaintiffs indeed did decide to thrust themselves into the vortex of that controversy, whether or not they already had become public figures.

Bird, C. J., concurred.

Respondents' petition for a rehearing was denied January 17, 1980. Bird, C. J., was of the opinion that the petition should be granted.