[Civ. No. 18746. Fourth Dist., Div. One. Aug. 20, 1980.]

H & M ASSOCIATES, Plaintiff and Appellant, v.
CITY OF EL CENTRO et al., Defendants and Respondents.

**COUNSEL**

John O. Meyers, Louis G. Fazzi, David I. Lipsky and William M. Shernoff for Plaintiff and Appellant.

Dotson & Stamper and David R. Dotson for Defendants and Respondents.

**OPINION**

**WIENER, J.**—Plaintiff H & M Associates appeals the judgment of dismissal entered after defendants', City of El Centro and the members of the El Centro City Council, demurrer to its second amended complaint (complaint) was sustained without leave to amend. As we will explain, plaintiff, a limited partnership, has alleged facts sufficient to state causes of action for intentional interference with contractual relationships, invasion of privacy and conspiracy against the City of El Centro (City). We reverse the judgment.

*Factual and Procedural Background*

H & M Associates, a limited partnership, owns and operates H & M Apartments, a 306-unit apartment complex in El Centro, California. The property was encumbered, before September 21, 1975, with deeds of trust securing notes in favor of defendants Coachella Valley Savings and Loan Association, U.S. Life Savings and Loan, and Kaibab Industries, Inc. requiring payments in monthly installments. During that period of time, each defendant knew that plaintiff had made, and there was pending for approval, a written application with the Federal Housing Authority to refinance the mortgages on the property. Defendants also knew that plaintiff had written contractual relationships with its tenants.

Water service to the apartment complex was furnished before September 16, 1975, by the City through eight separate water meters, each of which had a different account number. On September 16, 1975, the City, through its agents, terminated the water service to the apartment complex without notifying plaintiff of its intent to do so, without providing plaintiff with either a hearing or an opportunity to pay the delinquent amount due and after plaintiff had tendered payment on seven of the eight accounts. The city manager, by telephone, then notified the mortgagees, the FHA, the local newspaper, and several other governmental agencies, that the water service had been terminated by the City and would not be reinstated. Defendants acted with the intent to interfere and disrupt the contractual relationships to cause plaintiff the loss of tenants thereby preventing it from making the monthly payments due on the mortgages. Defendants' actions were based on their hope to buy the property on behalf of the City at a bargain price at the foreclosure sale. As a result of defendants' action, the plaintiff lost numerous tenants and became unable to pay the mortgage payments. The mortgages were foreclosed, the premises sold, and plaintiff lost the property.

The defendants demurred specially as well as generally to plaintiff's complaint. ■ The court sustained defendants' demurrer without leave to amend in general terms, contrary to Code of Civil Procedure section 472d. Regardless of this error, the court's ruling will be upheld if any of the grounds stated in the demurrer is well taken. (*E. L. White, Inc.* v. *City of Huntington Beach* (1978) 21 Cal.3d 497, 504, fn. 2 [146 Cal.Rptr. 614, 579 P.2d 505]; *Wheeler* v. *County of San Bernardino* (1978) 76 Cal.App.3d 841, 846, fn. 3 [143 Cal.Rptr. 295].)

*Plaintiff's First Cause of Action States Facts Sufficient to Constitute a Cause of Action for Intentional Interference With Contractual Relationships*

"An action [in tort] will lie for the intentional interference by a third person with a contractual relationship either by unlawful means or by means otherwise lawful when there is a lack of sufficient justification. [Citations.]" (*Herron* v. *State Farm Mutual Ins. Co.* (1961) 56 Cal.2d 202, 205 [14 Cal.Rptr. 294, 363 P.2d 310]; see also *Imperial Ice Co.* v. *Rossier* (1941) 18 Cal.2d 33, 35 [112 P.2d 631].) The tort is "a [specie] of the broader tort of interference with prospective economic advantage" involving similarity in elementary makeup and conduct while differing only in the existence of a legally binding contract. (*Buckaloo* v. *Johnson* (1975) 14 Cal.3d 815, 823 [122 Cal.Rptr. 745, 537 P.2d 865].) "To recover for inducing breach of contract, a plaintiff must establish (1) the existence of a valid contract; (2) the defendant had knowledge of the contract and intended to induce its breach; (3) the contract was in fact breached by the third party; (4) the breach was proximately caused by defendant's unjustified and wrongful conduct; and (5) that the foregoing resulted in damage to plaintiff. (*Abrams & Fox, Inc.* v. *Briney* (1974) 39 Cal.App.3d 604, 607-608 [114 Cal.Rptr. 328]; see also Rest.2d Torts, §§ 766, 766B.)" (*Richardson* v. *La Rancherita* (1979) 98 Cal.App.3d 73, 80 [159 Cal.Rptr. 285].) ■ Privilege or justification for the interference is an affirmative defense, not an element of plaintiff's cause of action, and thus may not be considered in support of the trial court's action in sustaining a demurrer unless apparent upon the face of the complaint. (*Buckaloo* v. *Johnson, supra*, 14 Cal.3d 815, 827-828; *Herron* v. *State Farm Mutual Ins. Co., supra*, 56 Cal.2d 202, 207; *Richardson* v. *La Rancherita, supra*, 98 Cal.App.3d at p. 80; *Lowell* v. *Mother's Cake & Cookie Co.* (1978) 79 Cal.App.3d 13, 19 [144 Cal.Rptr. 664]; *A. F. Arnold & Co.* v. *Pacific Professional Ins., Inc.* (1972) 27 Cal.App.3d 710, 714-715 [104 Cal. Rptr. 96].)

■ Guided by the foregoing principles, we conclude the second amended complaint alleges facts sufficient to state a cause of action for intentional interference with contractual relationships, as neither justification, privilege nor immunity appears upon the face of the complaint. Plaintiff has alleged the existence of valid tenant and mortgage agreements; defendants' awareness of the agreements as well as plaintiff's pending application for refinancing with the FHA; defendants' termination of the water service to the complex and defendant city manager's

notification by telephone to the mortgagees, the FHA, the local newspaper and several other governmental agencies that the water service had been terminated and would not be reinstated; defendants' intentional conduct was designed to interfere and disrupt the cited contractual relationships in order that the mortgages would be foreclosed upon with the hope of purchasing the property on behalf of the City at a bargain price; defendants' conduct caused the termination of numerous tenant contracts, subjecting plaintiff to liability under Civil Code section 789.3; and plaintiff's default upon the mortgages which were foreclosed upon and sold, stripping plaintiff of both the property and its equity in the property.

■  The City responds by asserting that the actions of its city manager in terminating the water service and notifying other parties were discretionary in nature for which immunity is granted to the public employee and vicariously to the public entity under Government Code sections 815.2 and 820.2.[1] They urge the foregoing is apparent from the City's Ordinance No. 645, Article 152, which gives to the city manager wide latitude in functioning as the administrative head of the government of the City under the direction and control of the city council.

In governmental tort cases "the rule is liability, immunity is the exception." (*Muskopf* v. *Corning Hospital Dist.* (1961) 55 Cal.2d 211, 219 [11 Cal.Rptr. 89, 359 P.2d 457]; see *Ramos* v. *County of Madera* (1971) 4 Cal.3d 685, 692 [94 Cal.Rptr. 421, 484 P.2d 93].) Courts should only decree governmental immunity where the Legislature has clearly provided for it, as "The important societal goal of compensating injured parties for damages caused by willful or negligent acts must prevail." (*Ramos* v. *County of Madera, supra,* 4 Cal.3d at p. 692.)

Sections 815.2 and 820.2 confer immunity upon "basic policy decisions" or conduct characterized as within the "planning" rather than the

---

[1]Section 815.2 provides: "(a) A public entity is liable for injury proximately caused by an act or omission of an employee of the public entity within the scope of his employment if the act or omission would, apart from this section, have given rise to a cause of action against that employee or his personal representative. [¶] (b) Except as otherwise provided by statute, a public entity is not liable for an injury resulting from an act or omission of an employee of the public entity where the employee is immune from liability."

Section 820.2 provides: "Except as otherwise provided by statute, a public employee is not liable for an injury resulting from his act or omission where the act or omission was the result of the exercise of the discretion vested in him, whether or not such discretion be abused."

"operational" level of decision-making. (*Sanborn v. Chronicle Pub. Co.* (1976) 18 Cal.3d 406, 415 [134 Cal.Rptr. 402, 556 P.2d 764]; *Tarasoff v. Regents of University of California* (1976) 17 Cal.3d 425, 445 [131 Cal.Rptr. 14, 551 P.2d 334, 83 A.L.R.3d 1166]; *Johnson v. State of California* (1968) 69 Cal.2d 782, 793-794 [73 Cal.Rptr. 240, 447 P.2d 352]; *Wheeler v. County of San Bernardino, supra*, 76 Cal.App.3d 841, 848.) The Supreme Court in *Johnson, supra*, 69 Cal.2d at pp. 794-795, fn. 8, explained: "Immunity for 'discretionary' activities serves no purpose except to assure that courts refuse to pass judgment on policy decisions in the province of coordinate branches of government. Accordingly, to be entitled to immunity the state must make a showing that such a policy decision, consciously balancing risks and advantages, took place. The fact that an employee normally engages in 'discretionary activity' is irrelevant if, in a given case, the employee did not render a considered decision." (See also *Sanborn v. Chronicle Pub. Co., supra*, 18 Cal.3d at p. 415.)

Defendants' complete reliance upon Ordinance No. 645 is misplaced. The pertinent sections of the ordinance only characterize the nature and breadth of the powers of the city manager, as the administrative head of the government. The ordinance neither refers to nor describes the alleged conduct as discretionary. Even if so labeled, it is doubtful that a decision of a city manager to terminate water service to a customer falls within the ambit of "planning" as contrasted to the operational level of decisionmaking. Defendants have thus failed to make the required showing necessary for immunity. Accordingly, on this sparse record, we conclude governmental discretionary immunity has not been established.

■ Defendants alternatively argue that the city manager's notifications of the termination of the water service were privileged communications under Civil Code section 47. Section 47 provides in pertinent part: "A privileged publication or broadcast is one made—

"1. In the proper discharge of an official duty.

". . . . . . . . . . . . . . .

"3. In a communication, without malice, to a person interested therein, (1) by one who is also interested, or (2) by one who stands in such relation to the person interested as to afford a reasonable ground

for supposing the motive for the communication innocent, or (3) who is requested by the person interested to give the information.

".  .  .  .  .  .  .  .  .  .  .  .  .  .  .

"5. By a fair and true report of (1) the proceedings of a public meeting, if such meeting was lawfully convened for a lawful purpose and open to the public, or (2) the publication of the matter complained of was for the public benefit."

This argument, based upon these absolute and qualified statutory privileges, at this stage of the proceedings suffers the same fate encountered by the statutory immunity contention. Regarding the absolute privilege conferred on all publications made "'[i]n the proper discharge of an official duty,'" the purpose of this privilege "is to insure efficiency in government by encouraging *policy-making* officials to exercise their best judgment in the performance of their duties free from fear of general tort liability." (*Sanborn* v. *Chronicle Pub. Co., supra,* 18 Cal.3d at pp. 412-413.) Since defendants failed to establish the city manager's conduct involved policy-making decisions, their reliance upon this absolute privilege is misplaced. ▉ Regarding the qualified privilege of a communication, without malice, to a person interested therein, plaintiff's allegation that defendants' conduct "was done with a conscious disregard of plaintiff's rights and with the intent to vex, injure or annoy plaintiff, such as to constitute...malice" is an adequate pleading of malice so as to withstand a demurrer based upon this qualified privilege. (*Agarwal* v. *Johnson* (1979) 25 Cal.3d 932, 944-945 [160 Cal. Rptr. 141, 603 P.2d 58]; *Sanborn* v. *Chronicle Pub. Co., supra,* 18 Cal.3d at p. 413; *Dietrich* v. *Litton Industries, Inc.* (1970) 12 Cal.App. 3d 704, 714 [90 Cal.Rptr. 856].) ▉ Finally, in regard to the immunity provided for in subdivision 5(2), it is absolute in nature and consequently unaffected by the pleading of malice. (*Williams* v. *Daily Review, Inc.* (1965) 236 Cal.App.2d 405, 418 [46 Cal.Rptr. 135].) Nevertheless, it is not sufficiently apparent from the complaint for us to conclude as a matter of law the communications to all the cited parties were for the public benefit.

Defendants, in passing, assert their conduct was justified in protecting the City's and the notified parties' financial interests. That justification, however, which would exempt defendants from liability as a matter of law does not appear on the face of the complaint and should be pleaded in the answer as an affirmative defense. (*Lowell* v. *Mother's*

*Cake & Cookie Co., supra,* 79 Cal.App.3d at p. 22; *Culcal Stylco, Inc.*
v. *Vornado, Inc.* (1972) 26 Cal.App.3d 879, 881-882 [103 Cal.Rptr.
419]; Code Civ. Proc., § 430.30.)

■ Whether defendants' conduct of interfering with existing con-
tracts with third persons was justified under the circumstances and thus
privileged, comprises a factual issue which should properly be placed
before the trier of fact. (*Lowell* v. *Mother's Cake & Cookie Co., supra,*
79 Cal.App.3d at pp. 20-22; *Bridges* v. *Cal-Pacific Leasing Co.* (1971)
16 Cal.App.3d 118, 132 [93 Cal.Rptr. 796].) It involves the application
of a test which balances the social and private importance of the objec-
tive advanced by the interference against the importance of the interest
interfered with, considering all the circumstances including the nature
of the actor's conduct and the relationship between the parties. (*Herron*
v. *State Farm Mutual Co., supra,* 56 Cal.2d at p. 206; *Richardson* v.
*La Rancherita, supra,* 98 Cal.App.3d at p. 80; *Greenberg* v. *Hollywood
Turf Club* (1970) 7 Cal.App.3d 968, 977 [86 Cal.Rptr. 885]; see also
Rest.2d Torts, § 767, pp. 26-39.)

■ *A Partnership May State a Cause
of Action for Invasion of Privacy*

A partnership as an entity distinct from its individual partners is now
recognized in various legal settings. Procedurally, it may sue in its own
name (Code Civ. Proc., § 388, subd. (a); see 3 Witkin, Cal. Procedure
(2d ed. 1971) Pleadings, §§ 76, 77, pp. 1751-1753) and it is a person
with recognized status under the partnership act, bankruptcy, criminal
law and licensing statutes. (6 Witkin, Summary of Cal. Law (8th ed.
1974) Partnerships, § 14, pp. 4264-4265; for contractor's licensing see
e.g. Bus. & Prof. Code, § 7025.)

In a social context many partnerships acquire a distinct personality, a
composite of characteristics unique to the partnership and different
from that of the individual partners. The reputation of prestigious law
firms or famous medical clinics known by the names of now-deceased
partners or founders is the residuum of the cumulative efforts, talents
and energies of its participants over the history of the organization.
Damage to the business reputation of the partnership is recompensed
through an action for defamation (Rest.2d Torts, § 562; *Rosenberg* v.
*J. C. Penney Co.* (1939) 30 Cal.App.2d 609 [86 P.2d 696]), and its eco-
nomic worth includes good will. (Bus. & Prof. Code, § 14100.)

Whether corporations or partnerships have a right to privacy is unsettled. There have been general statements to the effect that the right pertains only to individuals and it may not 'be claimed by any other. (Prosser, Law of Torts (4th ed. 1971) § 117, p. 815.) With reference to a corporation's right to sue for defamation, our high court has recently said: "'. . .there is no distinction between the protectible interest in reputation of corporations and individuals. . . . [¶] . . .the line between . . .natural persons and corporations is frequently fuzzy and ill-defined. Various legal considerations have long led to the incorporation of businesses that are in economic reality but individual proprietorships or partnerships. On the other hand, very large business enterprises may be conducted as individual proprietorships or partnerships. For that additional reason, it seems that for purposes of applying the First Amendment to defamation claims, the distinction between corporations and individuals is one without a difference.'" (*Vegod Corp.* v. *American Broadcasting Companies, Inc.* (1979) 25 Cal.3d 763, 770-771 [160 Cal.Rptr. 97, 603 P.2d 14].) The distinction between partnerships and individuals and their respective rights to privacy, depending upon the nature of the right asserted, is also a distinction without a difference.

The right to privacy exists in multiple fact contexts and in this sense it is amorphous—easy to recognize, but difficult to define. Plaintiff does not seek damages for hurt feelings because of "its" right to be left alone for how can a partnership, distinct from its members, suffer humiliation or embarrassment. Here, however, the damages requested relate to the partnership's economic loss—the real property it owned has been foreclosed.

In the commercial world, businesses, regardless of their legal form, have zones of privacy which may not be legitimately invaded. (See, e.g., *People* v. *Ramsey* (1969) 272 Cal.App.2d 302, 309 [77 Cal.Rptr. 249]; *G. M. Leasing Corp.* v. *United States* (1977) 429 U.S. 338 [50 L.Ed.2d 530, 97 S.Ct. 619, 629].) Bank customers entitled to privacy are not limited to individuals. (*Burrows* v. *Superior Court* (1974) 13 Cal.3d 238 [118 Cal.Rptr. 166, 529 P.2d 590].) The "California Right to Financial Privacy Act" (Stats. 1976, ch. 1320, p. 5911, § 5; Gov. Code, § 7460 et seq.) includes partnerships (Gov. Code, § 7465, subds. (c) and (d)) and prohibitions against disclosure by bookkeeping services of information contained in the books or records of their clients also includes partnerships within the protected class. (Civ. Code, §§ 1799.1, 1799, subd. (d).)

The increasing concern for privacy rights and its concomitant growth is the recognition of "...the accelerating encroachment on personal freedom and security caused by increased surveillance and data collection activity in contemporary society." (*White* v. *Davis* (1975) 13 Cal.3d 757, 774 [120 Cal.Rptr. 94, 533 P.2d 222].) The voters of this state manifested their anxiety by amending article I, section 1 of our state Constitution to include among the various "inalienable" rights of "all people" the right of "privacy." "The new provision's primary purpose is to afford individuals some measure of protection against this most modern threat to personal privacy." (*White* v. *Davis, supra,* 13 Cal.3d at p. 774.) Although the language in *White* refers to "individuals," there is nothing restrictive in its rationale.

Our constitutional privacy provision is concerned with four principal "mischiefs": "'(1) "government snooping" and the secret gathering of personal information; (2) the overbroad collection and retention of unnecessary personal information by government and business interests; (3) the improper use of information properly obtained for a specific purpose, for example, the use of it for another purpose or the disclosure of it to some third party; and (4) the lack of a reasonable check on the accuracy of existing records.'" (*Porten* v. *University of San Francisco* (1976) 64 Cal.App.3d 825, 830 [134 Cal.Rptr. 839], quoting from *White* v. *Davis, supra,* 13 Cal.3d 757.)

Plaintiff's complaint describes a situation different from that which faced the court in *White* or *Porten.* ■ Nevertheless, allegations which we must accept as true, state the City, through its manager, divulged information obtained for a proper purpose, i.e., data necessary for accounting purposes, and used it improperly with resultant damages. There is nothing on the face of the complaint which indicates the City was called by a credit agency for information about plaintiff, or that any of the mortgagees or the FHA had inquired about mismanagement of its apartment complex. At this stage, what appears to be the unsolicited acts of the City fall within the framework of plaintiff's right to privacy.

Where the intrusion consists of public exposure of private facts, it has been held that an action will not lie for oral statements for the publication must be physically tangible. "The right of privacy can only be violated by printings, writings, pictures or other permanent publications or reproductions, and not by word of mouth." (*Melvin* v. *Reid* (1931) 112 Cal.App. 285, 290 [297 P. 91]; *Gautier* v. *General Telephone Co.*

(1965) 234 Cal.App.2d 302, 309 [44 Cal.Rptr. 404]; *Grimes v. Carter* (1966) 241 Cal.App.2d 694, 698 [50 Cal.Rptr. 808, 19 A.L.R.3d 1310].)

The proposition that the right to privacy may not be violated by word of mouth has been criticized—"[t]he growth of radio alone has been enough to make this quite obsolete, and there now can be little doubt that writing is not required." (Prosser, Law of Torts (4th ed. 1971) § 117, p. 810.) Moreover, precedent on this issue antedates our constitutional amendment. There is nothing in section 1 which suggests that one's right to privacy may be inalienable except for the intrusion caused by oral statements. In this electronic age, where oral statements may ultimately receive wider coverage than a printed statement, there is no reason to immunize parties making such statements from liability. The test should turn on the nature of the privacy invaded and not on the means of communication.

Defendants argue that in any event its statements were privileged and/or protected because the late payments on plaintiff's water bills would have become part of the public record pursuant to Government Code sections 6252 and 27282 and California Water Code section 72100, and disclosure of facts on the public record is protected under the First Amendment. (*Cox Broadcasting Corp. v. Cohn* (1975) 420 U.S. 469 [43 L.Ed.2d 328, 95 S.Ct. 1029].) Again, defendants' arguments are outside the scope of our review. There is nothing in plaintiff's complaint or in matters which we may judicially notice which furnishes us information on plaintiff's alleged delinquent obligations. Whether they could have been cured before they became part of the public record is a question of fact which must await trial. At trial, all the events including the propriety, justification and constitutional protection of defendants' disclosure may be litigated and resolved.

### ■ *Plaintiff's Third Cause of Action States Facts Sufficient to State a Cause of Action for Conspiracy to Interfere With Contractual Relationships and to Invade Its Privacy*

Plaintiff's third cause of action is for civil conspiracy. After incorporating the first and second causes of action in their entirety, plaintiff alleges defendants knowingly and willfully conspired and agreed among themselves to interfere with plaintiff's contractual relationships and to invade plaintiff's privacy, and committed the acts in controversy in fur-

therance of the conspiracy, resulting in the damages set forth in the incorporated causes of action.

The gravamen of an action sounding in civil conspiracy is not the conspiracy but the damages suffered. (*Wise* v. *Southern Pacific Co.* (1963) 223 Cal.App.2d 50, 64 [35 Cal.Rptr. 652].) Where the complaint alleges both a conspiracy and the commission of a wrongful act, the only significance of the former allegation is its rendering of each participant in the wrongful act liable as a joint tortfeasor, regardless of his degree of participation. (*Widdows* v. *Koch* (1968) 263 Cal.App.2d 228, 234 [69 Cal.Rptr. 464]; *Wise* v. *Southern Pacific Co., supra,* at p. 64.) Consequently, in order to state a cause of action for civil conspiracy, "the complaint must allege (1) the formation and operation of the conspiracy, (2) the wrongful act or acts done pursuant thereto, and (3) the damage resulting from such act or acts." (*Wise* v. *Southern Pacific Co., supra,* 223 Cal.App.2d at p. 64.) "A tort action will also lie against third persons who pursuant to a conspiracy have wrongfully induced or procured the breach of a contract resulting in damages." (*Id.,* at p. 65.)

Accordingly, plaintiff by incorporating by reference the allegations of the first and second causes of action has alleged sufficient facts to state a cause of action for conspiracy to interfere with plaintiff's contractual relationships and to invade its privacy.

*Disposition*[2]

The judgment is reversed and the cause is remanded to the trial court with directions to overrule the general demurrer and to rule on the special demurrer.

Work, J.,* concurred.

**STANIFORTH, Acting P. J.**—I concur in the judgment of reversal.

---

[2]In light of our disposition, we deem it unnecessary to enumerate those other potential causes of action which may be stated, but not advanced, by plaintiff. However, we agree with the concurring opinion that plaintiff may additionally state a cause of action for damages arising from the wrongful termination of services by a public utility. (*Schultz* v. *Town of Lakeport* (1936) 5 Cal.2d 377, 383 [54 P.2d 1110, 55 P.2d 485, 108 A.L.R. 1168]; 53 Cal.Jur.3d, Public Utilities, § 115, p. 144.)

*Assigned by the Chairperson of the Judicial Council.

Plaintiff alleges inter alia: "(a) Without notifying plaintiff of its intent to terminate water service to the entire apartment complex, without providing plaintiff with a hearing regarding termination of said water service, and without providing plaintiff with an opportunity to pay any amounts due and owing on account of the provision of water service to said apartment complex, and after tender of payment for water service on seven (7) of the accounts hereinabove described, defendant CITY, by and through its City Manager, on or about September 16, 1975, terminated water service to the entire Three Hundred Six (306) units in the apartment complex hereinabove described;..."

These facts, standing alone, authorized the relief sought. The United States Supreme Court in *Memphis Light, Gas & Water Div.* v. *Craft* (1978) 436 U.S. 1 [56 L.Ed.2d 30, 40-43, 98 S.Ct. 1554, 1561-1563], held a municipal utility liable in damages for failure to provide adequate notice and opportunity for hearing prior to termination of essential utilities if under state law the customer had a protected interest in continuing service absent cause. (*Id.*, at pp. 1560-1562 [56 L.Ed.2d at pp. 39, 40].)

California law has long recognized a utility customer's right to damages for the wrongful termination of services. (*Schultz* v. *Town of Lakeport* (1936), 5 Cal.2d 377, 383; [54 P.2d 1110, 55 P.2d 485, 108 A.L.R. 1168] 53 Cal.Jur.3d, Public Utilities, § 115, pp. 142-146.) More recently the Legislature prescribed added protection for residential customers of utilities. Under present state law a utility may not terminate service to a residential dwelling on account of nonpayment of delinquent account *unless* notice is given at least seven days prior to proposed termination. Nor shall termination be carried out during the pendency of the investigation of a consumer complaint or dispute. (Pub. Util. Code, § 779 (amended 1977).)

Thus state law recognizes a property interest which is cognizable under federal due process as analyzed in *Memphis Light, Gas & Water Division* v. *Craft, supra*, 436 U.S. 1. Upon this additional basis the trial court abused its discretion in concluding plaintiff did not state a cause of action.

Respondents' petition for a hearing by the Supreme Court was denied October 29, 1980.