Filed 11/25/24  North Bay Steel Mill Supply & Recycling  v. Dept. of Resources etc. CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| NORTH BAY STEEL MILL SUPPLY & RECYCLING, | C098426 |
| Plaintiff and Appellant, | (Super. Ct. No. 34-2021-00292686-CU-BT-GDS) |
| v. | |
| DEPARTMENT OF RESOURCES RECYCLING AND RECOVERY  et al., | |
| Defendants and Respondents. | |

Plaintiff North Bay Steel Mill Supply & Recycling (North Bay) appeals from the trial court's order sustaining a demurrer without leave to amend, dismissing all of North Bay's causes of action against defendants Department of Resources Recycling and Recovery (Cal Recycle) and the Governor's Office of Emergency Services[1] (Office of

---

[1]     The Governor's Office of Emergency Services is referred to as the California Office of Emergency Services in the record.

Emergency Services) (collectively State Agencies).[2]  In its operative complaint, North Bay raised three causes of action against State Agencies alleging vicarious liability under Government Code[3] section 815.2 based on State Agencies' employees' tortious conduct of interfering with its existing and prospective contracts.  On appeal, North Bay argues it alleged sufficient facts to state claims under each of these causes of action pursuant to a vicarious liability theory.  We disagree and affirm.

FACTUAL AND PROCEDURAL BACKGROUND

We recite the facts, as if true, as alleged in the operative complaint.  (*Balikov v. S. Cal. Gas Co.* (2001) 94 Cal.App.4th 816, 819.)  We do not recite the allegations in the previously filed complaints, or the rulings regarding the sufficiency of those allegations because it is irrelevant to whether the trial court properly sustained the demurrer here.

I

*General Allegations*

Following the devastating Camp Fire in 2018, State Agencies awarded three primary fire-cleanup contracts to three contractors, including ECC Constructors LLC (Constructors).[4]  Prior to being awarded a primary fire-cleanup contract, Constructors and North Bay held meetings in November 2018 and January 2019 regarding North Bay's ability to dispose of metal debris for Constructors as part of Constructors's prospective fire cleanup.  Constructors ultimately promised North Bay an exclusive

---

**2**      North Bay also sued Odin Real Estate Group LLC and Odin Construction Solutions (collectively Odin), which were not parties to the demurrer and are not parties to this appeal.

**3**      Further undesignated section references are to the Government Code.

**4**      The operative complaint and the briefs use the name ECC Constructors LLC but the trial court's order uses ECC Contractors LLC.  We use the name as it appears in the operative complaint.

contract to perform the metal disposal work if Constructors was awarded a primary fire-cleanup contract. Constructors told State Agencies about its arrangement with North Bay and State Agencies approved the arrangement.

Constructors submitted its bid for a primary fire-cleanup contract on January 22, 2019. Cal Recycle awarded Constructors a primary fire-cleanup contract and on January 28, 2019, Constructors received a notice to proceed. Also on January 28, 2019, North Bay and Constructors met at Constructors's facility near the area damaged by the Camp Fire. On January 30, 2019, Constructors sent North Bay a purchase order. North Bay "clarified the pricing and payment terms" and Constructors sent its final revised purchase order on January 31, 2019, accepting North Bay's "requested clarification." North Bay alleged the final terms of the contract were set forth in the January 31, 2019 purchase order, which provided that the contract took effect on January 28, 2019. In the alternative, North Bay alleged "there was an implied contract between [Constructors] and North Bay pursuant to [Civil Code section] 1621, as manifested by the acts and conduct of the parties and surrounding circumstances." Constructors never requested North Bay begin work, and when North Bay asked why, Constructors pointed to "weather and other unspecified complications."

North Bay later learned State Agencies had selected another company, Odin, to perform work North Bay had contracted with Constructors to perform, but for all primary contract holders and for approximately sixteen times the price. As to State Agencies' selection of Odin to perform this work, North Bay learned that on January 29, 2019, Office of Emergency Services issued a press release advising that Odin was a local facility that would dispose and recycle all metal debris for contractors holding primary fire-cleanup contracts. On January 31, 2019, Odin had presented a proposal to Cal Recycle. North Bay alleged Odin's proposal was late and incomplete, and that Odin was recently founded and ill equipped to perform metal disposal and recycling. North Bay further alleged the solicitation and selection of Odin to perform metal disposal violated

3

competitive bidding statutes and regulations. Also on January 31, 2019, Odin entered service agreements with all the primary fire-cleanup contract holders, including Constructors, to dispose of metal waste. The day after Odin submitted its proposal to Cal Recycle, Cal Recycle approved Odin's proposal.

II

*Allegations Of Wrongdoing*

North Bay generally alleged State Agencies' conduct "consist[ed] of a covert, secret sweetheart deal, illegal favoritism and corruption" and that State Agencies' employees' conduct was tortious because North Bay's injuries did not result from the employees' exercise of discretion. North Bay further alleged State Agencies and their employees conspired with Odin to ignore statutes and regulations and tortiously interfere with North Bay's existing contract with Constructors, and prospective contracts with the other two primary contractors, for metal disposal work.

As an example, North Bay alleged State Agencies deviated from a purported rule they propounded during the prebidding question period that the prospective primary contractors were responsible for contracting with subcontractors, such as water truck providers, instead of the subcontractors contracting directly with State Agencies. As another example, North Bay alleged State Agencies violated a goal stated during the prebidding question period that they would select cost effective and environmentally efficient debris receiving facilities. North Bay alleged it, not Odin, could perform the work at a low cost and in an environmentally efficient manner. Put more generally, North Bay alleged, "The plan was [for State Agencies] to wrongfully and illegally bypass the standard competitive bidding process publicly announced and ostensibly required by the State [Agencies], in violation of the Public Contract Code, [State Administrative Manual], [State Contracting Manual], and numerous other statutes and regulations cited below, and without the State [Agencies] conducting and making an informed decision based upon a reasoned and fair analysis of competing options."

4

North Bay incorporated its general allegations into each of its causes of action alleged against State Agencies. North Bay's first cause of action alleged vicarious liability under section 815.2, subdivision (a) for intentional interference with a contract. North Bay alleged its contract with Constructors existed at all relevant times discussed in the complaint. As for the tortious conduct of State Agencies' employees, North Bay alleged these employees, "within their respective scopes of employment, intentionally interfered with [Constructors and North Bay's] [s]ubcontract." North Bay alleged the tortious interference "was not the result of any discretion vested in those State [Agencies'] employees . . . [and] involved operational-level ministerial decisions and acts by State [Agencies'] employees for which there is no governmental immunity."

North Bay's second cause of action also alleged vicarious liability for intentional tortious interference but with North Bay's prospective economic relations. The factual allegations related to the conduct of State Agencies' employees mirrored the allegations alleged in North Bay's first cause of action, in that the employees' interference was not the result of discretionary acts and involved operational level ministerial decisions.

North Bay's third cause of action alleged vicarious liability for negligent tortious interference with prospective economic relations. North Bay alleged the employees of the State Agencies did not exercise reasonable care and "engaged in wrongful conduct . . . by conspiring [with] themselves and O[din] and engaging in misconduct . . . to benefit themselves." Similar to its first two causes of action, North Bay alleged the tortious conduct at issue "was not the result of any discretion vested in those State [Agencies'] employees. The tortious and wrongful conduct forming the basis of this claim involved operational-level ministerial decisions and acts by State [Agencies'] employees for which there is no governmental tort immunity."

North Bay's fourth cause of action alleged direct governmental liability under section 815.6 for State Agencies' failure to discharge mandatory duties. North Bay provided an exhaustive list of duties it alleged State Agencies failed to discharge that

5

were imposed by the Public Contract Code, State Contracting Manual, State Administrative Manual, Government Code, and California Code of Regulations.

North Bay also alleged three causes of action against Odin, which are not subjects of this appeal.

## III

### *Procedural Background*

North Bay filed the operative complaint on September 2, 2022. State Agencies demurred to the operative complaint later that month. The trial court sustained the demurrer without leave to amend, finding North Bay failed to state a claim that State Agencies were directly liable by breaching a mandatory duty during the competitive bidding process because no duty was owed to North Bay as a nonbidding party. The trial court further found North Bay's allegations of tortious interference with a contract were lacking in factual support, making its remaining causes of action dependent on only State Agencies' employees' failure to follow competitive bidding statutes and regulations. Because the trial court found North Bay failed to prove a breach of a mandatory duty in regard to competitive bidding laws, it reasoned North Bay's vicarious liability causes of action lacked merit. Further, the trial court found North Bay failed to demonstrate an employee could be held personally liable for failing to comply with enactments concerning the competitive bidding process, as required for vicarious liability. Consequently, the trial court dismissed North Bay's action against State Agencies.

North Bay appeals.

## DISCUSSION

"A demurrer tests the legal sufficiency of the factual allegations of [the] complaint." (*Thornton v. California Unemployment Ins. Appeals Bd.* (2012) 204 Cal.App.4th 1403, 1411.) On appeal from a dismissal after an order sustaining a demurrer, " ' "we examine the operative complaint de novo to determine whether it [contains] facts sufficient to state a cause of action under any legal theory." ' " (*Silva v.*

6

*Langford* (2022) 79 Cal.App.5th 710, 715.)  In evaluating the complaint, we must assume the truth of all material facts properly pled in the complaint.  (*Balikov v. S. Cal. Gas Co.*, *supra*, 94 Cal.App.4th at p. 819.)  We also must accept as true facts that are reasonably implied or may be inferred from the complaint's express allegations.  (*Ibid*.)  However, " 'we "do not assume the truth of contentions, deductions, or conclusions of fact or law." ' "  (*Khodayari v. Mashburn* (2011) 200 Cal.App.4th 1184, 1189.)

North Bay challenges only the trial court's dismissal of its first three causes of action against State Agencies alleging vicarious liability.  It argues at length the trial court erred because the trial court linked the adequacy of its allegations in the fourth cause of action alleging direct government liability with the adequacy of its allegations in the first three causes of action alleging vicarious government liability.  North Bay argues the adequacy of these allegations should have been analyzed separately because direct and vicarious government liability are independent and cumulative theories of liability.  State Agencies appear to agree with North Bay's basic premise that direct and vicarious government liability are independent concepts that should be analyzed separately.  Instead, State Agencies argue North Bay failed to allege sufficient facts demonstrating State Agencies could be held vicariously liable for their employees' intentional or negligent interference with North Bay's existing or prospective contractual relations.  North Bay strongly disputes State Agencies' characterization of the adequacy of its allegations.  Accordingly, we will address only the parties' dispute as to whether North Bay's complaint adequately stated causes of action for intentional interference with a contract, intentional interference with prospective economic relations, and negligent tortious interference with prospective economic relations pursuant to a vicarious liability theory under section 815.2.

7

# I

## *Vicarious Liability Of Public Agencies*

Affecting each of North Bay's causes of action against State Agencies is the Government Claims Act (§ 810 et seq.). "[S]ection 815 specifies that, except as otherwise provided by statute, a public entity is not liable for an injury, whether such injury arises out of an act or omission of the public entity or a public employee or any other person." (*Lueter v. State of California* (2002) 94 Cal.App.4th 1285, 1299.) Section 815.2, subdivision (a) is such a statute, and provides, "A public entity is liable for injury proximately caused by an act or omission of an employee . . . within the scope of his [or her] employment if the act or omission would . . . have given rise to a cause of action against that employee or his [or her] personal representative." "[S]ection 820, subdivision (a) specifies that, except as otherwise provided by statute, a public employee is liable for injury to the same extent as a private person." (*Lueter*, at pp. 1299-1300.)

" '[A] public entity may be held vicariously liable for the conduct of its employees acting within the scope of their employment, but only to the extent that the employees may be held liable.' [Citations.] 'The liability of a public entity . . . is subject to any immunity of the public entity provided by statute . . . and is subject to any defenses that would be available to the public entity if it were a private person.' [Citation.] [¶] Extant case law supports the general proposition that a public entity and its employees may ([without a showing of immunity]) be held liable for slander. [Citations.] It is also possible for a public entity and its employees to be held liable for intentional interference with prospective economic advantage and trade libel." (*City of Costa Mesa v. D'Alessio Investments, LLC* (2013) 214 Cal.App.4th 358, 377-378, italics omitted.)

# II

## *North Bay Failed To Adequately Allege Tortious Interference With A Contract*

To recover for tortious interference with a contract, "a plaintiff must establish (1) the existence of a valid contract; (2) the defendant had knowledge of the contract and

8

intended to induce its breach; (3) the contract was in fact breached by the third party; (4) the breach was proximately caused by [the] defendant's unjustified and wrongful conduct; and (5) that the foregoing resulted in damage to plaintiff." (*H & M Associates v. City of El Centro* (1980) 109 Cal.App.3d 399, 405.)

State Agencies challenge North Bay's showing as to the first element of its tortious interference claim, contending North Bay failed to demonstrate the existence of a valid contract. State Agencies point to the timing alleged in the complaint, which it argues failed to demonstrate Constructors and North Bay entered a contract before the alleged interference occurred.

North Bay counters that it alleged the existence of a valid contract and cites to its factual allegation that a contract existed between it and Constructors during all relevant times. North Bay does not reference the specific facts it pled supporting this conclusory allegation or explain how its pled facts amount to a valid contract. Citing *Blank v. Kirwan* (1985) 39 Cal.3d 311, 318, North Bay argues its bare assertion is enough to meet its pleading requirement at the demurrer stage. Not so. Even the *Blank* court recognized the long-standing principles that we do not assume the truth of contentions, deductions, or conclusions of fact or law. (*Ibid*., quoting *Serrano v. Priest* (1971) 5 Cal.3d 584, 591; accord, *Khodayari v. Mashburn*, *supra*, 200 Cal.App.4th at p. 1189.)

The existence of a valid contract is vital to North Bay's first cause of action for tortious interference with a contract. Indeed, " 'courts provide a damage remedy against third party conduct intended to disrupt an existing contract precisely because the exchange of promises resulting in such a formally cemented economic relationship is deemed worthy of protection from interference by a stranger to the agreement. Economic relationships short of contractual, however, should stand on a different legal footing as far as the potential for tort liability is reckoned. . . . [¶] A doctrine that blurs the analytical line between interference with an existing business contract and interference with commercial relations less than contractual is one that invites both uncertainty in

9

conduct and unpredictability of its legal effect. . . . Our courts should, in short, firmly distinguish the two kinds of business contexts, bringing a greater solicitude to those relationships that have ripened into agreements, while recognizing that relationships short of that subsist in a zone where the rewards and risks of competition are dominant.' " (*Bed, Bath & Beyond of La Jolla, Inc. v. La Jolla Village Square Venture Partners* (1997) 52 Cal.App.4th 867, 878-879, italics omitted.)

In the operative complaint, North Bay alleged the interfering conduct was State Agencies' selection of Odin to perform metal disposal work on January 29, 2019. The allegations pertaining to the formation of a contract between Constructors and North Bay are: (1) the companies had discussions in November 2018 and January 2019 about North Bay performing metal disposal work for Constructors in the event it was awarded a primary fire-cleanup contract; (2) Constructors promised North Bay an exclusive contract for metal disposal in the event Constructors was awarded a primary fire-cleanup contract; (3) Constructors was awarded a primary fire-cleanup contract; (4) representatives from the two companies met at Constructors facility on January 28, 2019; (5) the companies negotiated payment terms of the contract after January 29, 2019; and (6) the companies agreed to the terms of the contract on January 31, 2019, two days after the State Agencies selected Odin.

North Bay does not argue how these allegations demonstrate a valid express or implied contract at the time of State Agencies' interfering conduct as required to state a claim for intentional interference with a contract. (*H & M Associates v. City of El Centro*, *supra*, 109 Cal.App.3d at p. 405.) Even so, we conclude the facts alleged in the complaint fail to state a valid contract. A contract requires (1) "[p]arties capable of contracting," (2) "[t]heir consent," (3) "[a] lawful object," and (4) "[a] sufficient cause or consideration." (Civ. Code, § 1550.) The terms of an express contract are stated in words. (Civ. Code, § 1620.) The existence and terms of an implied contract are manifested by conduct. (Civ. Code, § 1621.) "The distinction reflects no difference in

10

legal effect but merely in the mode of manifesting assent." (*Retired Employees Assn. of Orange County, Inc. v. County of Orange* (2011) 52 Cal.4th 1171, 1178.)  Here, State Agencies selected Odin to perform metal disposal work on January 29, 2019.  At that point, North Bay and Constructors had discussed and agreed North Bay would perform metal disposal work for the primary fire-cleanup contract Constructors had been awarded, and the two met at Constructors's facility near the area damaged by the Camp Fire.  The contents of conversations at the facility were not alleged in the complaint.  When sent a purchase order on January 30, 2019, North Bay responded by "clarif[ying] the pricing and payment terms" of the contract, which Constructors accepted and put into writing on January 31, 2019, two days after State Agencies contracted with Odin.  These allegations are insufficient to demonstrate contract formation on or before January 29, 2019, because sufficient consideration was still being determined by North Bay and Constructors as of that date.  (See Civ. Code, §§ 1550 [sufficient consideration is a necessary element of a contract], 1605 [good consideration is a "benefit conferred[] or agreed to be conferred"].)

As a consequence, North Bay has failed to demonstrate error in the trial court's finding that North Bay's allegations failed to provide support for a claim of interference with a contract.  (See *In re S.C.* (2006) 138 Cal.App.4th 396, 408 ["To demonstrate error, appellant must present meaningful legal analysis supported by citations to authority and citations to facts in the record that support the claim of error"].)  North Bay's reliance on its conclusory allegation that a contract existed at all relevant times is insufficient.  (See *Khodayari v. Mashburn*, *supra*, 200 Cal.App.4th at p. 1189.)  Accordingly, North Bay failed to state a claim for tortious interference with a contract.

III

*North Bay Failed To Adequately Allege Intentional*

*And Negligent Interference With Prospective Economic Relations*

" 'The tort of intentional or negligent interference with prospective economic advantage imposes liability for improper methods of disrupting or diverting the business

11

relationship of another [that] fall outside the boundaries of fair competition.' [Citation.] For intentional interference, the plaintiff must plead and prove: ' " '(1) an economic relationship between the plaintiff and some third party, with the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3) intentional acts on the part of the defendant designed to disrupt the relationship.' " ' [Citation.] With respect to the type of intentional disruptive acts that are actionable, they must be wrongful by some independent legal measure, beyond interference." (*Golden Eagle Land Investment, L.P. v. Rancho Santa Fe Assn.* (2018) 19 Cal.App.5th 399, 429, italics omitted.) " '[A]n act is independently wrongful if it is unlawful, that is, if it is *proscribed* by some constitutional, statutory, regulatory, common law, or other determinable legal standard.' " (*Edwards v. Arthur Andersen LLP* (2008) 44 Cal.4th 937, 944, italics added.)

"[T]he requirement that the defendant's interference be independently wrongful is an essential—and, indeed, defining and limiting—aspect of the tort of intentional [or negligent] interference with a prospective economic advantage. It is quite literally the element that causes the interference to be a tort. [Citation.] There is a good reason for this. . . . [W]here the plaintiff and a third party have only a 'prospective contractual relationship,' that third party's business is still up for grabs: ' "[A]s long as" ' other market participants ' "use[] fair and reasonable means" ' to entice the third party away from the plaintiff, the ' "privilege of free competition" ' shields those participants from liability in tort for doing so. [Citations.] The limitation of the tort of intentional interference with a prospective economic advantage to cases where the plaintiff proves that the defendant's conduct was independently wrongful thus 'sensibly redresses the balance between providing a remedy for predatory [that is, wrongful] economic behavior' (on the one hand) 'and keeping legitimate business competition outside litigative bounds' (on the other)." (*Drink Tank Ventures LLC v. Real Soda in Real Bottles, Ltd.* (2021) 71 Cal.App.5th 528, 539-540, italics omitted.)

North Bay argues it satisfied the independent wrong element of intentional and negligent interference with prospective economic advantage because it alleged State Agencies' "employees wrongfully and illegally ignored statutes and regulations designed to protect against misuse of public funds, and otherwise engaged in wrongful favoritism, fraud, and corruption." As to employees' ignoring statutes and regulations, North Bay's allegations referred to only statutes and regulations pertaining to competitive bidding as the basis of State Agencies' employees' interfering conduct. North Bay, however, does not point to any independent legal measure *proscribing* the employees' alleged wrongful conduct of failing to follow competitive bidding laws, such that an individual can be held liable for the failure. (See *Edwards v. Arthur Andersen LLP*, *supra*, 44 Cal.4th at p. 944.) According to North Bay's own allegations, the specific competitive bidding statutes and regulations it relies on compel only government agencies to comply with requirements, not individuals. Indeed, North Bay does not cite any legal authority demonstrating an individual's failure to comply with competitive bidding laws is actionable in any way. (See § 815.2, subd. (a) [a public entity is liable if the employees' conduct would give rise to a cause of action against that employee].) Thus, North Bay has failed to allege an independent wrong based on a legally determinable standard.

North Bay has also failed to allege an independent wrong based on a theory of negligence. As the trial court found, and which North Bay does not challenge, neither State Agencies nor their employees owed a duty to North Bay to follow competitive bidding statutes or regulations. Given the lack of a duty owed to North Bay, North Bay cannot show State Agencies' employees' failure to comply with competitive bidding statutes and regulations independently constituted negligence. (*LiMandri v. Judkins* (1997) 52 Cal.App.4th 326, 348 [negligent interference with an economic relationship requires an existing duty of care owed by the defendant to the plaintiff].)

As to North Bay's argument State Agencies' employees engaged in wrongful favoritism, fraud, and corruption, this assertion fails to present meaningful legal analysis

13

supported by citations to authority and allegations in the complaint that support the claim of error. (See *In re S.C.*, *supra*, 138 Cal.App.4th at p. 408.) We cannot discern which allegations constitute wrongful favoritism, corruption, or fraud, and North Bay fails to cite to its allegations or authority demonstrating State Agencies' employees' conduct constituted wrongful favoritism, corruption, or fraud by a legally discernable standard. To the extent North Bay's operative complaint can be read to allege State Agencies' employees committed fraud by making misrepresentations during the prebidding question period, that claim must fail because public agencies cannot be held liable for the misrepresentations of their employees. (§ 818.8 ["A public entity is not liable for an injury caused by misrepresentation by an employee of the public entity, whether or not such misrepresentation be negligent or intentional"].) Moreover, North Bay makes no attempt to demonstrate how its allegations of favoritism, corruption, or fraud form the basis of negligent interference. (*Ibid*.)

At bottom, North Bay has not pointed to a theory of liability supporting the conclusion that State Agencies' employees committed an independent wrong for which the employee could individually, or State Agencies could vicariously, be held liable. Accordingly, North Bay failed to state claims for both intentional and negligent interference with a prospective economic relationship.

14

DISPOSITION[5]

The judgment is affirmed.  The parties shall bear their own costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(5).)

/s/
ROBIE, Acting P. J.

We concur:

/s/
MAURO, J.

/s/
DUARTE, J.

---

**5**     Given that we affirm the trial court's judgment on the grounds that North Bay failed to state claims of economic interference, we deny State Agencies' request for judicial notice of the Governor's Proclamation of a State Emergency signed November 8, 2018, the Governor's Executive Order No. B-57-18 signed November 14, 2018, and pages from Cal Recycle's invitation for bids related to the Camp Fire as irrelevant.