**NATIONAL FOUNDATION FOR CANCER RESEARCH, INC., Appellant,**

v.

**COUNCIL OF BETTER BUSINESS BUREAUS, INC., Appellee.**

No. 82–1382.

United States Court of Appeals, Fourth Circuit.

Argued Dec. 8, 1982.

Decided April 5, 1983.

Mac S. Dunaway, Washington, D.C. (Kenneth G. Hurwitz, Gary E. Cross, Dunaway, McCarthy & Dye, P.C., Washington, D.C., on brief), for appellant.

Anna C. Thode, Washington, D.C. (Walter J. Smith, David Florin, Wilson, Elser, Edelman & Dicker, Washington, D.C., on brief), for appellee.

Before SPROUSE and ERVIN, Circuit Judges, and MICHAEL,* District Judge.

MICHAEL, District Judge:

This case is before the court on appeal from the United States District Court for the Eastern District of Virginia. The National Foundation for Cancer Research, Inc., [hereinafter "Foundation" or "NFCR"], the plaintiff/appellant, has appealed the order of the district court which granted summary judgment in favor of the Council of Better Business Bureaus, Inc. [hereinafter "Council" or "CBBB"], the defendant/appellee. Although the summary judgment order did not dispose of the entire case, the district court, pursuant to a stipulation of dismissal, dismissed without prejudice that portion of the action which remained for trial.

The NFCR sought both monetary and injunctive relief, alleging it had been wrongfully injured by an August 1981 report wherein the CBBB purported to "evaluate" the NFCR as a charitable institution. In the report, it was noted that the NFCR did not meet the Council's standards which call for spending a reasonable percentage of a charity's total income on program services. In addition, the CBBB indicated it regarded certain statements contained in the NFCR's 1980 fund raising appeals as inaccurate and misleading. As a result of this evaluation, the Foundation claims it was defamed by the CBBB. Furthermore, the NFCR asserts that the Council has a substantial effect upon the economic viability of charitable organizations by its promulgation of certain standards and its reporting of compliance, or lack of compliance, with these standards to potential donors. As a consequence of this influence, the CBBB, it is alleged, owes a duty to the charities it evaluates to apply its standards fairly and reasonably. The NFCR claims this duty was breached and that the Council is liable in a civil action for the resulting damage.

Ruling on the Council's motion for summary judgment, the district court found against the NFCR on three crucial legal issues, all of which are before this court today. With respect to the NFCR's suit for defamation, the court ruled, first, that the Council's statement that the NFCR did not spend a reasonable percentage of its total income on program services was a statement of opinion and, accordingly, not actionable. The second ruling was that, under *Gertz v. Robert Welch, Inc.,* 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974), the NFCR was a public figure for the purposes of the remainder of the defamation action. Third, the court found that neither the NFCR nor any other charity was entitled to judicial review of the CBBB's evaluation to determine whether substantive or procedural due process was afforded the evaluated charity. This court affirms the decision of the district court on all three matters.

I. *A Common Law "Duty of Fairness" Is Not Applicable*

The appellant urges this court to adopt the position that the CBBB's imprimatur of approval is so crucial to a charitable organization's institutional viability by virtue of the effect it has on potential donors that, under the common law applicable to private associations, the CBBB has a duty to apply its standards fairly and reasonably to those charities it evaluates. Of course, concomitant with that "duty" is an action for breach, which the appellant would have this court recognize. The court finds it curious that neither party specifically addressed itself to the common law of Virginia, for this court, hearing this matter under its diversity jurisdiction, is obliged, under the principles of *Erie Railroad v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), to construe and apply the substantive law of Virginia in this action. In such a posture, a federal court must "determine the rule that the [state] Supreme Court would probably follow, not

---

* Hon. James H. Michael, Jr., United States District Judge for the Western District of Virginia, sitting by designation.

fashion a rule which we, as an independent federal court, might consider best." *Kline v. Wheels by Kinney,* 464 F.2d 184, 187 (4th Cir.1972). The appellant has cited numerous cases to support his assertion that a private organization's actions can be subjected to judicial review where the power exercised by that entity can significantly affect the economic or professional concerns of other parties. This court finds, however, as did the district court below, that these cases recognize a cause of action for breach of the duty of fairness only where a private association can, by excluding an entity from membership or by refusing to recognize or certify an entity, deny a virtual pre-requisite to the practice of a profession or the operation of a business. *See McCreery Angus Farms v. American Angus Association,* 379 F.Supp. 1008 (S.D.Ill.1974) aff'd mem. 506 F.2d 1404 (7th Cir.1974); *Pinsker v. Pacific Coast Society of Orthodontists,* 12 Cal.3d 541, 116 Cal.Rptr. 245, 526 P.2d 253 (1974); *Higgins v. American Society of Clinical Pathologists,* 51 N.J. 191, 238 A.2d 665 (1968).

The case before us simply does not fit this fact pattern. Although we accept, as did the district court for summary judgment purposes, the NFCR's characterization of the Council as an organization which can significantly affect the economic viability of charitable organizations by virtue of its evaluations, the court cannot find that a positive evaluation by the CBBB is a pre-requisite to a charity's economic viability in the same way as the cases noted above, and others cited by the appellant, require before the common law duty of fairness is triggered. The CBBB neither licenses, nor certifies, nor confers membership upon the charities it evaluates. It is merely a "con-

sumer's guide" to charitable donations, albeit an influential one.

In light of the above, we believe it unlikely that the Virginia Supreme Court would recognize the Foundation's proposed extension of the common law duty of fairness, particularly considering the lack of any analogous Virginia precedent. The NFCR's remedy for unfair or unreasonable evaluations must be found, if at all, in an action for defamation.

II. *CBBB's Views On "Reasonable" Spending Are A Protected Statement Of Opinion*

■ The district court ruled the following excerpt from the CBBB's August 1981 Report to be a constitutionally-protected statement of opinion:

The National Foundation for Cancer Research (NFCR) does not meet the provision of the CBBB Standards for Charitable Solicitations which calls for spending a reasonable percentage of total income on program services, as distinct from fund raising and administration.

The Foundation challenges this ruling on the grounds that the comment is a statement of fact, not of opinion. It seems to the court that what the NFCR is ultimately challenging is the Council's benchmark of 50 percent as the minimum percentage of total income which a charity should spend on its program services. In the court's view, that percentage which constitutes a "reasonable" percentage of total income spent on program services is merely an opinion, over which the parties disagree, and not a defamatory false statement of fact.[1] Since the Supreme Court has specifi-

---

1. In its August 1981 Report, the Council provided the Foundation's view.

NFCR POSITION: NFCR contends that comparisons of program expenses and total income in any given year do not fully or fairly reflect the full extent of its program expenses. It reports that there is a long "lead time" between public fund raising and cash program expenses due to the need to carefully define the work to be done and to be able to ensure that projects likely to take several years to complete will be fully funded. Thus

current program expenses should, in NFCR's view, be compared to the smaller amounts of cash contributions which the organization received in prior years. When viewed in this manner, NFCR reports that its program expenses exceed 50% of contributions, and thus believes that it meets the [Council's] standards.

In a similar vein, the Foundation also challenged the Council's method for computing its percentages. The Foundation would, for instance, include certain non-cash contributions

cally recognized that the characterization of a person's conduct as reasonable or unreasonable is a protected statement of opinion, *Greenbelt Cooperative Publishing Association v. Bresler,* 398 U.S. 6, 90 S.Ct. 1537, 26 L.Ed.2d 6 (1970), this ruling by the district court must be affirmed.

### III. *NFCR Is A "Public Figure" For Defamation Purposes*

■ The district court ruled that the NFCR was a public figure for the purposes of its defamation action against the CBBB. Accordingly, the NFCR would be held to the strict standard of proof enunciated in *New York Times v. Sullivan,* 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964) in prosecuting its defamation action against the Council. The Foundation has appealed this ruling, contending that the district court's holding ignored controlling precedent and was erroneous as a matter of law. We affirm the district court.

The appellant asserts that the district court, in finding that it was a public figure for some purposes, misapplied the Supreme Court test enunciated in *Gertz v. Robert Welch, Inc.,* 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974) for determining "limited purpose" public figures. The NFCR would restrict the scope of the *Gertz* holding to define public figures as those who "have thrust themselves to the forefront of particular public controversies in order to influence the resolution of the issues involved." *Id.* at 345, 94 S.Ct. at 3009. The appellant then asserts that the only "controversy" is a private dispute regarding the application of the CBBB's reasonableness standard to the NFCR. Thus, there being no particular public controversy in which the appellant could have thrust itself to the forefront, there can be no correct finding that the NFCR was a public figure under *Gertz.*

We think it is the appellant who misapplies the *Gertz* test. *Gertz* recognizes that the key to determining whether a party is a public figure is the party's own conduct.

It is preferable to reduce the public-figure question to a more meaningful context by looking to the nature and extent of an individual's participation in the particular controversy giving rise to the defamation.

*Id.* at 352, 94 S.Ct. at 3013. On the basis of the NFCR's conduct, the district court had ample cause to rule the appellant a public figure for the purposes of the defamation action. Even though the "public controversy" which formed the basis of this lawsuit arose almost entirely from the Foundation's solicitation and use of funds for its cancer research, the mere fact that the NFCR generated the controversy does not preclude a finding that there was, in fact, a controversy. *See Steaks Unlimited, Inc. v. Deaner,* 623 F.2d 264, 273–74 (3rd Cir.1980). The evidence is uncontroverted that the Foundation had thrust itself into the public eye, not only through its massive solicitation efforts (almost 68 million pieces of direct mail solicitation in the past three years), but also through the claims and comments it made in many of these solicitations where it extolled its judicious use of donated funds in finding a cure for cancer, where it declared its objective to make "NFCR a household word," and where it asserted the need "to present [NFCR's] case to the jury of the American people." The Foundation vigorously sought the public's attention, and succeeded to a substantial degree, as is reflected by the approximately $25,000,000 it raised in the past three years and the numerous inquiries the CBBB had received from the public and the media regarding NFCR. It was these inquiries which in fact led the Council to undertake its evaluation.

of computer time and other services by universities through which research was conducted as both income and program expenditures. The Council apparently excludes non-cash contributions in its computations of expenditures and income. Questions as to the amounts expended and the inclusion of certain non-cash items as contributions are certainly factual, but the contrary conclusions drawn from those facts present the real point of contention between the parties. Each party having determined the facts according to that party's standards, each then applies its judgment and its criteria to those facts, and forms its opinion as to the meaning of those facts. This does not alter the court's view that CBBB's standard of reasonableness is still an opinion, and not a defamatory false statement of fact.

The appellant would, by its reliance on such cases as *Hutchinson v. Proxmire,* 443 U.S. 111, 99 S.Ct. 2675, 61 L.Ed.2d 411 (1979), portray itself as one victimized by the Council's attempt to "create" a defense by making the plaintiff a public figure, thereby erecting the *New York Times v. Sullivan, supra,* obstacles to recovery. However, it is clear from the record that the NFCR did not unwittingly become the subject of publicity with respect to its approach to cancer research or its use of donated funds. Quite to the contrary, it attempted, through various means at its disposal, to put itself and its methods before the public. With respect to these issues, it became a public figure under *Gertz.*

AFFIRMED.