**ISUZU MOTORS LIMITED, Plaintiff,**

**v.**

**CONSUMERS UNION OF UNITED STATES, INC., Defendant.**

**No. CV 97–5685 RAP (RNBx).**

United States District Court, C.D. California.

Sept. 20, 1999.

Christopher C. Spencer, Robert M. Buell, McGuire Woods Battle & Boothe, Richmond, VA, Jonathan W. Lubell, Frank McClain–Sewer, Morrison Cohen Singer & Weinstein, New York City, Andrew M. White, Melvin N.A. Avanzado, White O'Connor Curry Gatti & Avanzado, Los Angeles, CA, Richard A. Bowman, Bowman & Brooke, Minneapolis, MN, Mark V. Berry, Bowman & Brooke, Torrance, CA, for plaintiff.

Barry G. West, Jessica D. Lazarus, Corey E. Klein, Gaims Weil West & Epstein, Los Angeles, CA, Patrick A. Dawson, Dawson & Huddleston, Marietta, GA, Joseph W. Cotchett, Frank M. Pitre, Steven N. Williams, Cotchett, Pitre & Simon, Burlingame, CA, Michael N. Pollet, Pollet & Felleman, New York City, for defendant.

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

PAEZ, District Judge.

## I.

### Introduction

Plaintiff Isuzu Motors Ltd. ("Isuzu") is a Japanese corporation that designs and manufacturers the Isuzu Trooper, a sport-utility vehicle (SUV). Defendant Consumers Union of United States ("CU") is an

organization dedicated to testing commercial products for purposes of ensuring and evaluating product quality, safety, and performance. Defendant publishes the nationally circulated magazine *Consumer Reports.*

Plaintiff has asserted claims against defendant CU in its Second Amended Complaint for: (1) defamation (first and second causes of action); (2) product disparagement (third through twenty-third causes of action); and (3) violations of California Business & Professions Code section 17200 (twenty-fourth cause of action). Pending before the Court is defendant's motion for summary judgment.

Upon consideration of the arguments of counsel and for the reasons set forth below, defendant's motion for summary judgment is **granted in part and denied in part.**

## II.

### *Discussion*

### A. Factual Background

Defendant CU publishes consumer recommendations concerning automobiles, SUVs, and other consumer products. These recommendations are based upon evaluative criteria developed by CU and regularly appear in *Consumer Reports.* Beginning in June 1996, defendant CU conducted a series of performance tests on the Isuzu Trooper.

Plaintiff alleges that beginning in August, 1996 and continuing to date, in both its magazine *Consumer Reports* and in numerous other print, broadcast and Internet publications, defendant CU and its employees made a series of false statements about Isuzu and the Isuzu Trooper. These statements were allegedly to the effect that: (1) the 1995–96 Trooper is more prone to tip up or roll over than other SUVs; (2) the 1995–96 Trooper is prone to tipping up or rolling over during "real-world" driving maneuvers and thus is unsafe to operate; (3) Isuzu and its officials refused to meet with defendant to discuss and review defendant's purported test data regarding the Trooper's alleged

safety problems; and (4) Isuzu and its officials ignored the Trooper's safety problems and thus knowingly placed consumers at risk.

Plaintiff contends that the criteria used by CU to evaluate the Trooper were both unscientific and heavily subject to driver influence. Plaintiff alleges that CU nonetheless published the results of its tests on the Trooper to pressure the National Highway Traffic Safety Administration (NHTSA) into adopting rollover safety standards and to boost the circulation of *Consumer Reports.* Defendant responds that its tests conformed with its rigorous scientific standards and methods, and thus any statements based upon these tests and procedures are true and cannot form the basis for plaintiff's claims for defamation and product disparagement.

### B. Summary Judgment Standard

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). *See also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Whether a fact is material is determined by looking to the governing substantive law; if the fact may affect the outcome, it is material. *Id.* at 248, 106 S.Ct. 2505. If the moving party seeks summary adjudication with respect to a claim or defense upon which it bears the burden of proof at trial, its burden must be satisfied by affirmative, admissible evidence. By contrast, when the non-moving party bears the burden of proving the claim or defense, the moving party can meet its burden by

pointing out the absence of evidence submitted by the non-moving party. The moving party need not disprove the other party's case. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

If the moving party meets its initial burden, the "adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e).

In assessing whether the non-moving party has raised a genuine issue, its evidence is to be believed, and all justifiable inferences are to be drawn in its favor. *Anderson,* 477 U.S. at 255, 106 S.Ct. 2505 (citing *Adickes v. S.H. Kress and Co.,* 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970)). Nonetheless, "the mere existence of a scintilla of evidence" is insufficient to create a genuine issue of material fact. *Id.* at 252, 106 S.Ct. 2505. As the Supreme Court explained in *Matsushita,*

> [w]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no "genuine issue for trial."

*Matsushita Elec. Indus. Co.,* 475 U.S. at 586–87, 106 S.Ct. 1348.

Defendant argues that summary judgment is a "favored remedy" in defamation cases. However, this is not strictly the case. Although the district court must keep in mind the clear and convincing evidence standard necessary in cases where a plaintiff must show actual malice, the district court's role in defamation cases is substantially similar to its role in any other motion for summary judgment. As the Ninth Circuit observed in *Kaelin v. Globe Communications Corp.,* 162 F.3d

1036 (9th Cir.1998), the court must still "draw all justifiable inferences in favor of [the non-moving party], 'including questions of credibility and of the weight to be accorded particular evidence.' " 162 F.3d at 1039. Thus, the appropriate summary judgment question is "whether a reasonable jury could find, by clear and convincing evidence, that [plaintiff] has shown actual malice". *Id.*

### C. Procedural Issues

As a preliminary matter, the Court notes defendant's objections to plaintiff's statement of genuine issues. At oral argument on this motion, defendant insisted that because plaintiff failed to respond to Defendant's Statement of Uncontroverted Facts and Conclusions of Law in a paragraph-by-paragraph manner, plaintiff did not contradict defendant's assertions and thus had failed to raise a triable issue of material fact.

Local Rule 7.14.2 requires that "[a]ny party who opposes the motion shall serve and file with his opposing papers a separate document containing a concise 'Statement of Genuine Issues' setting forth all material facts as to which it is contended there exists a genuine issue necessary to be litigated." Local Rule 7.14.2. Although many parties choose to address the moving party's uncontroverted facts paragraph by paragraph, this format is not required by the Local Rules.[1] In addition, plaintiff specifically stated that, given the voluminous nature of defendant's proposed statement, it would submit a briefer response that focused on the primary issues at stake.

■ Defendant's Statement was indeed voluminous—it consisted of 802 paragraphs of uncontroverted facts and 168 paragraphs of proposed conclusions of law, totaling 291 pages in length. Under these circumstances, plaintiff cannot be faulted for limiting its response to the primary

---

1. However, the dual column format is suggested by the California Practice Guide.

Schwarzer et al., *Federal Civil Procedure Before Trial* Form 14:D (1999).

issues of concern. In addition, given that the Local Rules impose no specific requirement for the format of a Statement of Genuine Issues, the Court agrees with plaintiff that its Statement of Genuine Issues is sufficient.

### D. Elements of Defamation

 Under California law, "[t]he tort of defamation exists whenever a false and unprivileged statement which has a natural tendency to injure or which causes special damage is communicated to one or more persons who understand its defamatory meaning and its application to the injured party." *Jackson v. Paramount Pictures Corp.*, 68 Cal.App.4th 10, 26, 80 Cal. Rptr.2d 1, 9 (1998). When the subject of the alleged defamatory falsehood is a public official or public figure, a plaintiff may not recover damages for defamation without clear and convincing proof that the false statement was made with " 'actual malice'—that is, with knowledge that it was false or with reckless disregard of whether it was false or not." *Harte– Hanks Communications, Inc. v. Connaughton*, 491 U.S. 657, 659, 109 S.Ct. 2678, 105 L.Ed.2d 562 (1989) (citing *New York Times Co. v. Sullivan*, 376 U.S. 254, 279–80, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964)). However, when a private figure is the target of the alleged defamatory utterances, plaintiff need show only negligence on the part of a defendant. *Melaleuca, Inc. v. Clark*, 66 Cal.App.4th 1344, 1359, 78 Cal.Rptr.2d 627, 636 (1998).

### E. Whether Isuzu Motors is a Public Figure

The Supreme Court in *Gertz v. Robert Welch Inc.*, 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974) set forth the standard for determining when a person becomes a public figure. "In some instances an individual may achieve such pervasive fame or notoriety that he becomes a public figure for all purposes and in all contexts. More commonly, an individual voluntarily injects himself or is drawn into a particular public controversy and thereby becomes a public figure for a limited range of issues."

*Gertz*, 418 U.S. at 351, 94 S.Ct. 2997. There are two primary policy considerations for differentiating between public and private figures. First, public figures enjoy "significantly greater access to the channels of effective communication and hence have a more realistic opportunity to counteract false statements than private individuals normally enjoy. Private individuals are therefore more vulnerable to injury, and the state interest in protecting them is correspondingly greater." *Id.* at 344, 94 S.Ct. 2997. In addition, public figures have, for the most part "thrust themselves to the forefront of particular public controversies in order to influence the resolution of the issues involved." *Id.*

 A general public figure is one who is a public personality in all aspects of life. *Dworkin v. Hustler Magazine*, 867 F.2d 1188, 1197 (9th Cir.1989). However, a limited purpose public figure is only a public figure to "the nature and extent of [its] participation in public controversies." *Id.* Such controversies are *not* defined as matters of interest to the public: rather, the controversy "must be a real dispute, the outcome of which affects the general public or some segment of it in an appreciable way .... a public controversy is a dispute that in fact has received public attention because its ramifications will be felt by persons who are not direct participants." *Foretich v. Capital Cities/ABC Inc.*, 37 F.3d 1541, 1554 (4th Cir.1994) (citing *Waldbaum v. Fairchild Publications, Inc.*, 627 F.2d 1287, 1296 (D.C.Cir. 1980)).

The Court agrees with plaintiff that corporations are not automatically considered public figures. *See Vegod Corp. v. ABC*, 25 Cal.3d 763, 770, 160 Cal.Rptr. 97, 101, 603 P.2d 14 (1979). However, the courts have not developed a uniform approach to considering a corporation's public status. California and Ninth Circuit courts have tended to apply the same standard to determining public figure status for corporations as articulated in *Gertz* respecting individual persons. *See, e.g., Mattel Inc. v. MCA Records, Inc.*, 28 F.Supp.2d 1120,

1162 (C.D.Cal.1998) (citing to *Gertz* and California case law in determining that MCA is a public figure); *Trans World Accounts, Inc. v. Associated Press*, 425 F.Supp. 814, 819 (N.D.Cal.1977) ("it seems that for purposes of applying the First Amendment to defamation claims, the distinction between corporations and individuals is one without a difference"). The Fifth Circuit, on the other hand, has rejected the application of the traditional public-private figure dichotomy to corporations. Instead, the Fifth Circuit has applied three alternate factors where the plaintiff claiming defamation was a corporation: (1) the notoriety of the corporation to the average individual in the relevant geographical area; (2) the nature of the corporation's business; and (3) the frequency and intensity of the media scrutiny that a corporation normally receives. *Snead v. Redland Aggregates, Ltd.*, 998 F.2d 1325, 1329 (5th Cir.1993).

Defendant attests that: (1) the 1992 Isuzu Trooper was the subject of an article in *Popular Science* magazine after the vehicle tipped during avoidance tests; (2) Isuzu repeatedly sought to have its products reviewed by U.S. media; (3) after CU aired its initial findings, plaintiff Isuzu distributed several press releases and held a press conference that was broadcast live throughout the United States; (4) Isuzu sent letters to Trooper owners, published pamphlets, and made videotapes concerning the Trooper and CU (Def.'s Ex. 334 (videotape sent to Trooper Owners); Def.'s Rep. at 5–6.)

The record before the Court demonstrates that Isuzu vigorously defended its position after CU published its findings about the Trooper. A person or entity is not automatically rendered a public figure merely by virtue of being drawn into litigation and experiencing related publicity as a result. *Hutchinson v. Proxmire*, 443 U.S. 111, 134, 99 S.Ct. 2675, 61 L.Ed.2d 411 (1979). However, the record contains evidence that Isuzu had already injected itself into the public controversy concerning rollover standards. (Def.'s Ex. 332 (October 20, 1994 comments of Isuzu on Notice of Proposed Rulemaking regarding Vehicle Rollover Stability–Consumer Information).) In addition, much of Isuzu's defense of the Trooper was not the result of this litigation: rather, Isuzu vigorously participated in public debate about the Trooper's safety and the efficacy of CU's testing procedures for almost a year before filing its complaint on July 31, 1997.

The safety of the Isuzu Trooper and the steps that Isuzu did or did not take to enhance that safety are clearly a matter of public controversy. In addition, Isuzu has been an active participant in the American car market and, through the development and marketing of vehicles like the Trooper, has had a substantial effect upon that market. *See, e.g.,* Def.'s Ex. 392 (marketing brochure for the 1995 Isuzu Trooper). To echo the Fifth Circuit's standards in *Snead,* Isuzu regularly receives intense media scrutiny, at least to the extent of its marketing of SUVs. *Cf. Blue Ridge Bank v. Veribanc Inc.,* 866 F.2d 681, 687 (4th Cir.1989) (interpreting *National Foundation for Cancer Research v. Council of Better Business Bureaus,* 705 F.2d 98 (4th Cir.1983) and noting that in *National Foundation* the Foundation had thrust itself into the public eye through massive solicitations and comments made in these solicitations about the use of its funds).[2]

---

2. Plaintiff argues that Isuzu Motors Limited is merely responsible for the manufacture and sale of vehicles to Isuzu America, which in turn imports Troopers to the United States and resells them to American Isuzu Motors Inc., who distributes the vehicles to independent franchise dealers. (Pl.'s Stat.Gen. Issues, ¶¶ 300–304.) Plaintiff claims that marketing and promotion of Isuzu vehicles in the United States, including the 1995–96 Trooper, is performed independently by American Isuzu Motors Inc. and Isuzu America, (*id.* at ¶ 306) and such actions cannot be imputed to Isuzu Motors Ltd.

The Court has not found, nor have the parties cited, any case law addressing the specific question of whether the activities of an affiliate may be imputed to the parent for purposes of determining public figure status. Nonetheless, as discussed above, the Court believes that Isuzu Motors Ltd., has, by virtue of its manufacture of the Trooper and its

Finally, unlike a private individual or even a small corporation, Isuzu clearly has widespread access to the media, as demonstrated by its campaigns in print and television media. Therefore it cannot be said that Isuzu lacks the resources to effectively rebut CU's arguments about the Trooper.

■ Thus, Isuzu can be considered a public figure to the extent that it has been an active participant in the market for SUVs and, through its marketing and advertising, has made claims about the safety and performance of the Trooper. Accordingly, defendant's motion for summary judgment with respect to Isuzu's public figure status is **granted.** The Court thus turns to the question of whether plaintiff can meet its burden to demonstrate by clear and convincing evidence that actual malice was present.

### F. Actual Malice

■ Courts in defamation cases have "a constitutional duty to 'exercise independent judgment and determine whether the record establishes actual malice with convincing clarity.' " *Id.* (citing *Bose Corp. v. Consumers Union of United States, Inc.,* 466 U.S. 485, 514, 104 S.Ct. 1949, 80 L.Ed.2d 502 (1984)). In other words, the court is responsible for determining not only whether an issue of fact exists with respect to the existence of actual malice, but whether a reasonable jury could find actual malice by clear and convincing evidence.

■■ As the Supreme Court has emphasized, the "actual malice" standard is not satisfied merely through a showing of ill will or "malice" in the ordinary sense of the term. *Harte–Hanks Communications, Inc. v. Connaughton,* 491 U.S. 657, 666, 109 S.Ct. 2678, 105 L.Ed.2d 562 (1989). Rather, malice entails a showing that the defendant made a false statement " 'with knowledge that the statement was false or with reckless disregard as to whether or not it was true.' " *Id.* at 667,

109 S.Ct. 2678 (citing *Hustler Magazine Inc. v. Falwell,* 485 U.S. 46, 56, 108 S.Ct. 876, 99 L.Ed.2d 41 (1988)). In other words, defendant must have made the decision to publish the relevant information with a " 'high degree of awareness of . . . probable falsity,' " or defendant must have entertained " 'serious doubts as to the truth of [the] publication.' " *Harte–Hanks Communications,* 491 U.S. at 667, 109 S.Ct. 2678 (citing *Garrison v. Louisiana,* 379 U.S. 64, 74, 85 S.Ct. 209, 13 L.Ed.2d 125 (1964) and *St. Amant v. Thompson,* 390 U.S. 727, 731, 88 S.Ct. 1323, 20 L.Ed.2d 262 (1968)). Actual malice is a subjective standard that must be determined on a case-by-case basis. Plaintiff, however, is entitled to prove the defendant's state of mind through circumstantial evidence. *Harte–Hanks Communications,* 491 U.S. at 668, 109 S.Ct. 2678. *See also Eastwood v. National Enquirer, Inc.,* 123 F.3d 1249 (9th Cir.1997)

■ Finally, actual malice is a requirement for product disparagement claims as well as for defamation. *Bose Corp. v. Consumers Union of the United States, Inc.,* 466 U.S. 485, 104 S.Ct. 1949, 80 L.Ed.2d 502 (1984) (applying actual malice standard to product disparagement action); *Melaleuca,* 66 Cal.App.4th at 1361, 78 Cal. Rptr.2d at 637. *See also Blatty v. New York Times Co.,* 42 Cal.3d 1033, 1045, 232 Cal.Rptr. 542, 549, 728 P.2d 1177 (1986) ("First Amendment limitations are applicable to all claims, of whatever label, whose gravamen is the alleged injurious falsehood of a statement.").

Although plaintiff has alleged twenty separate claims for product disparagement, defendant has elected to treat these claims as a whole, rather than on an individual basis. Defendant makes the global argument that there is no possibility that a reasonable trier of fact could find actual malice on the part of CU. Defendant relies upon the integrity of CU's testing and the use of an independent expert to verify

defense of the Trooper after CU's comments on the Trooper's safety, participated suffi-

ciently in the public controversy to render Isuzu a limited purpose public figure.

CU's protocol. CU also emphasizes that there was no reason for it to falsify any tests of the Trooper.

Plaintiff contends, in response, that CU knew that its short course maneuver, the course utilized to test the Trooper, was highly susceptible to driver influence. Plaintiff claims that CU published its results knowing that the short course was subject to such influence and knowing that it had been explicitly disapproved of by the NHTSA and other authorities on vehicle safety.

The record contains evidence that CU *knew* that its test was heavily subject to driver influence. First, CU observed significantly different tip-up rates and severity among the three drivers who initially tested the vehicle in June, 1996. *See, e.g.,* Def.'s Ex. 52 (Petersen memo of June 28, 1996) ("The Trooper rolls over frequently with EAP [Petersen] at the helm, maybe less so with RS and only occasionally with KS [Sheehan]. Certainly driver variability is an issue, but more important is the ability to successfully drive the course without pylon knock-downs."); Def.'s Ex. 50 (July 10, 1996 report of Sheehan's Short Course Avoidance Maneuver Tests) (Sheehan reporting that he would not rate the Isuzu's handling as Not Acceptable, rather he would rate it as poor, and that he experienced no tip-up in his initial short course tests of the Trooper). *See also* Def.'s Ex. 80 at 33 (June 1997 NHTSA Petition Analysis) (finding that CU tests are subject to a variety of steering and steering rate inputs which lead to different results, and that the tests on the Trooper involved different levels of such inputs).

In addition, defendant knew that its testing methods had been criticized by the NHTSA as unreliable, at least for the purposes of predicting rollover propensity. CU admits that it performed the same short course tests on the Suzuki Samurai in 1988. (Pittle Decl. ¶¶ 32–33, Def.'s Ex. 105.) The NHTSA, in its published Denial of Motor Vehicle Defect Petitions respecting the Suzuki Samurai, which considered such tests of the vehicle, among other criteria, stated:

> [t]he existing test procedures for assessing the rollover propensity of vehicles are unsatisfactory because they do not provide for repeatable, reproducible results, and there are no accepted performance criteria. The testing appears to rely on the skill and influence of the driver and the presumption that the vehicle suspension, tire, and road surface characteristics will remain constant throughout the testing. At present there is no standard accepted test or series of test procedures and performance requirements which accurately predict a vehicle's rollover propensity.

(Def.'s Ex. 16 (Federal Register, Vol. 53, No. 174, at 34867 (Sept. 8, 1988)).) Thus CU was aware that its tests were significantly reliant upon driver input and skill.

Finally, plaintiff emphasizes CU's disregard of relevant mortality statistics on the Trooper. The Court is not in a position to evaluate whether these statistics were "meaningful" or not. (*Cf.* 2d Amd. Compl.Ex. F. at 158 (*Consumer Reports* October 1996 article ("We found no meaningful national statistics on rollover fatalities or injuries specifically for the 1995 or 1996 Trooper")).) CU, however, did have some statistics regarding the 1995 Trooper rollover rates in its possession and chose not to refer to these statistics in its publications regarding the Trooper. (Def.'s Ex. 65.)

Failure to investigate a story thoroughly, standing alone, is not sufficient to support a finding of reckless disregard. *See, e.g., St. Amant,* 390 U.S. at 730, 88 S.Ct. 1323 (failure to verify information falls short of proving reckless disregard). However, deliberately avoiding information that may undermine a published story may be grounds for a finding of malice. *Harte–Hanks Communications,* 491 U.S. 657, 109 S.Ct. 2678, 105 L.Ed.2d 562.

For example, where a publication fails to investigate contradictory evidence that it

knows will likely undermine its story, this may be grounds for a finding of actual malice. *Harte–Hanks Communications,* 491 U.S. at 692, 109 S.Ct. 2678 ("it is likely that the newspaper's inaction was a product of a deliberate decision not to acquire knowledge of facts that might confirm the probable falsity of [a source's] charges").

■ Finally, although a newspaper's motive in publishing material may be relevant to malice, a goal of increasing one's profits through publishing material is not sufficient to prove actual malice. *Harte–Hanks Communications,* 491 U.S. at 667, 109 S.Ct. 2678 ("If a profit motive could somehow strip communications of the otherwise available constitutional protection, our cases from *New York Times* to *Hustler Magazine* would be little more than empty vessels.")

■ Here, plaintiff has raised a genuine issue of material fact as to whether defendant knowingly disregarded information within its possession about the nature of the short course and the Trooper's performance in the short course.[3] Defendant's motion for summary judgment with respect to whether defendant acted with actual malice regarding the alleged defamatory and disparaging utterances and publications is accordingly **denied.**

### G. Analysis of the Alleged Defamatory Statements

In addition to its claims for product disparagement, plaintiff has also asserted two defamation claims based upon: (1) the December 23, 1996 Press Release, including the statements alleged in ¶ 65(f) of plaintiff's Second Amended Complaint; and (2) the March 6, 1997 letter to Peterson's 4–Wheel & Off–Road Magazine, particularly ¶ 71(a) (Compl, Ex. M.). Defendant argues that these statements were mere opinion and therefore cannot support a defamation claim.

### 1. Opinion

As the Ninth Circuit stated in *Unelko Corp. v. Rooney,* 912 F.2d 1049 (1990), there is no blanket protection for "opinions." Rather, "the threshold question in defamation suits is not whether a statement might be labeled opinion, but rather whether a reasonable factfinder could conclude that the statement impl[ies] an assertion of objective fact." *Unelko,* 912 F.2d at 1053 (referencing *Milkovich v. Lorain Journal Co.,* 497 U.S. 1, 18, 110 S.Ct. 2695, 111 L.Ed.2d 1 (1990)).

■ Whether a statement is one of fact or opinion is a question of law to be decided by the court. *Baker v. Los Angeles Herald Examiner,* 42 Cal.3d 254, 228 Cal.Rptr. 206, 721 P.2d 87 (1986). In order to determine whether an assertion may be viewed as one of fact, courts should focus upon: (1) whether the speaker used figurative or hyperbolic language that would negate the impression that he was seriously making a statement of fact; (2) whether the general tenor of the utterance would negate the impression that the utterance was a statement of fact; and (3) whether the assertion was susceptible of being proved true or false. *Id.* at 1053–55. The court "must place itself in the position of the hearer or reader, and determine the sense or meaning of the statement according to its natural and popular construction." *Id.* This is done by looking at the "totality of the circumstances," which encompasses the language of the statement and the context in which the statement was made, including the knowledge and understanding of the audience to whom the publication was directed. *Id.* Finally, the Supreme Court has also suggested

---

**3.** Both plaintiff and defendant have addressed several other areas of factual dispute at length, including: defendant's motives for allegedly misrepresenting the results of its tests on the Trooper; the thoroughness and effectiveness of Mr. Allen's examination of the short course; and the degree of "scientific" accuracy of CU's evaluative criteria. Because the Court has found that plaintiff has raised sufficient factual issues respecting the presence of actual malice to warrant a denial of summary judgment, the Court need not address these other areas of factual dispute at this time.

that a publication's reputation for factual accuracy is one factor that a trier of fact may consider in determining a reader's response to certain statements. *Masson v. New Yorker Magazine, Inc.,* 501 U.S. 496, 513, 111 S.Ct. 2419, 115 L.Ed.2d 447 (1991) (publication of work in *The New Yorker,* a magazine with a "reputation for scrupulous factual accuracy," could lead a reader to believe that language in quotations should be read as verbatim reports of statements made by the interview subject, rather than as mere paraphrase).

### 2. December 23, 1996 press release

Plaintiff bases its first claim of defamation upon the following sentence in the December 23, 1996 press release:

"If Isuzu's leaders had accepted any of our five invitations to come to our test facility and review our findings in-depth, they would have seen how far off base [Isuzu's consultant]'s conclusions were" said Dr. Pittle. "Perhaps then they would have directed more effort to protecting their customers than at shielding their public image."

(Pl.'s 2d. Amd.Compl. at ¶ 65(f)). The factual assertions implied by this statement are: Isuzu did not accept any of CU's invitations to come to the test facility; Isuzu did not review CU's findings in depth; Isuzu's consultant's conclusions were off-base; and Isuzu directed more effort to shielding its public image than to protecting its customers.

Although defendant makes much of Dr. Pittle's use of the words "perhaps" and "if," arguing that such words indicate only opinion and not fact, the Court is not persuaded by this reasoning. Such language is speculative or opinion-like to the extent that Dr. Pittle was merely expressing an opinion as to what Isuzu's reaction might have been had they gone to visit the CU site. However, such a statement also relies upon a factual assertion that: (1) Isuzu failed to take such action; and (2) Isuzu did not adequately protect Trooper passengers.

With respect to the first factual assertion, plaintiff does not dispute that Isuzu representatives did not go to the CU test facility. Plaintiff, in its statement of genuine issues, claims that Isuzu's representatives repeatedly accepted CU's invitations, but that CU refused to provide information that Isuzu requested and therefore final agreement was never reached. (See Mochizuki Decl.Ex. 2 (letter of August 21, 1996, accepting CU's offer).) The evidence submitted by Isuzu indicates that Isuzu and CU had repeated communications about visiting the CU facilities and about exchanging information, but ultimately were unable to come to an agreement about such an exchange. (Mochizuki Decl. and attached exhibits.) In short, although plaintiff undisputedly did not visit the facility, plaintiff has raised a significant question as to whether defendant's representation that Isuzu *refused* to visit the CU facility was false.

The December 1996 press release also contains the factual assertion that Isuzu took inadequate steps to protect its customers. As discussed above, plaintiff has presented evidence that: (1) the short course that CU was using to predict rollover susceptibility was heavily subject to driver influence and was not accurate; (2) there is no established correlation between real-life situations and the tests performed by CU; and (3) CU deliberately disregarded evidence in its possession that the Trooper had no higher a mortality rate than other SUVs. Because plaintiff has demonstrated the existence of significant issues of material fact respecting the accuracy of Consumer Union's testing and its reliance thereon to condemn the Trooper as unsafe, defendant's motion for summary judgment on plaintiff's cause of action for defamation arising from the December 1996 press release is **denied.**

### 3. March 6, 1997 letter

Plaintiff bases its second claim for defamation upon a letter of March 6, 1997 from R. David Pittle, CU's vice president, to the

editorial director of *Peterson's 4–Wheel & Off–Road* magazine:

> Perhaps then Isuzu would have realized that the Trooper's tendency to tip up is the result of a design defect, and not test-driver influence. And that would have moved the automaker to at least attempt a lasting fix to the problem, instead of scrambling to protect its public image.

(Pl.'s 2d. Amd.Compl. at ¶ 71(a).) This sentence contains the following factual allegations: (1) the Trooper's tendency to tip up is the result of a design defect and *not* test-driver influence; and (2) Isuzu scrambled to protect its public image in response to CU's assertions and has not attempted to find a lasting solution to the problem.

Again, defendant argues that these statements are merely opinion. However, although there is some slight exaggeration in this statement ("scrambling"), by and large it is not hyperbolic. Also, given the context of this letter (it was written several months into the heated exchanges between CU and Isuzu about the safety of the Trooper), the assertion that the Trooper tip-ups observed by CU were the result of design defect and not driver discretion is clearly a factual assertion meant to rebut Isuzu's contrary assertions.

■ With respect to the first factual allegation implied in this sentence, as discussed above, Isuzu has raised a question of fact as to whether CU knew that its short course test was heavily subject to driver influence. Here, CU's statement directly states the contrary. Thus, for the reasons discussed above concerning the accuracy of the CU short course test, the Court finds that plaintiff has demonstrated that it may be able to show by clear and convincing evidence that CU acted with actual malice by asserting that the Trooper had a pronounced tendency to tip and that this tendency was the result of a design defect. Accordingly, because the Court finds that Isuzu has raised a material triable issue of fact with respect to whether or not the results in the CU test were the result of design defect or of

driver input, defendant's motion for summary judgment with respect to a finding of actual malice on plaintiff's second cause of action is **denied.**

### H. California Business and Professions Code § 17200

Defendant argues that because plaintiff cannot show the existence of actual malice by clear and convincing evidence, the Court should grant summary judgment on plaintiff's section 17200 claim.

The Court in its April 9, 1998 Order, observed that California Business and Professions Code section 17200 "is interpreted broadly and allows lawsuits based on the public's right to protection from fraud, deceit and other unlawful conduct, as well as actions aimed at anticompetitive business practices." *Isuzu Motors Ltd. v. Consumers Union of United States, Inc.*, 12 F.Supp.2d 1035, 1048 (C.D.Cal.1998). Here, plaintiff alleges that it is defendant's publication of defamatory and disparaging statements intended to deceive the public that constitute an unfair business practice under section 17200.

The Court previously observed that the injunctive remedies of section 17200 are only available to plaintiff here to the extent the injunction sought is in keeping with the First Amendment. *Id.* at 1048. Plaintiff has now realleged its complaint to state that it only seeks to enjoin those statements that are determined not to be protected by the First Amendment. (Pl.'s 2d Amd.Compl. at 90.) Therefore, whether or not plaintiff's claim for violation of section 17200 is tenable is dependent upon whether plaintiff's challenges to defendant's alleged defamatory and disparaging statements are protected by the First Amendment.

■ As the Court has detailed above, plaintiff has raised material triable issues of fact respecting whether or not actual malice was present when defendant made the statements in question. Accordingly, because plaintiff's section 17200 claim is

based upon these same grounds and the Court has found a question of fact with respect to whether or not actual malice was present, defendant's motion for summary judgment respecting plaintiff's twenty-fourth cause of action is **denied.**

### III.

### *Conclusion*

Plaintiff Isuzu Motors Limited is a limited public figure and thus must prove by clear and convincing evidence that defendant Consumers Union acted with actual malice. To this extent, defendant's motion for summary judgment is **granted.** However, plaintiff has raised genuine triable issues of fact with respect to whether actual malice was present. Defendant's motion with respect to the presence of actual malice is accordingly **denied.**

**IT IS SO ORDERED.**