Filed 10/29/25  Quinones v. Contreras CA2/2

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| RODOLFO QUINONES, Jr., | B340046 |
| Plaintiff and Respondent, | |
| v. | (Los Angeles County Super. Ct. No. 24STCV05330) |
| CLAIRE CONTRERAS, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Alison Mackenzie, Judge. Affirmed.

Macdonald & Cody, Edye A. Hill and Danielle M. Boyd for Defendant and Appellant.

Snell & Wilmer, Keith M. Gregory, Jing Hua, and Aliya L. Astaphan for Plaintiff and Respondent.

_____

Defendant Claire Contreras appeals the trial court's order denying her Code of Civil Procedure section 425.16[1] special motion to strike Plaintiff Rodolfo Quinones, Jr.'s defamation claims. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Contreras is a Filipino-American video blogger who operates the YouTube channel Boldyak TV. Contreras posts video commentaries to that channel using the moniker Maharlika Boldyakera, a Filipino Tagalog phrase meaning brave and a fighter. She chose the name because she aspires "to be a brave fighter for the Philippines in [her] broadcasts as [she] often talk[s] about the corruption, suppression, oppression, and injustice that exists in the Philippines." Boldyak TV had approximately 278,000 subscribers in June 2024 in multiple countries, including the Philippines, the United States, and Canada.

Quinones is a Filipino-American fashion designer with an eponymous haute couture clothing label, "Puey Quinones Couture." Among his celebrity clients are the President and First Lady of the Philippines, Ferdinand Marcos, Jr., and Liza Araneta-Marcos. Quinones's designs have been featured in the reality modeling competition "America's Next Top Model" and an exhibit at the Los Angeles County Museum of Art. In May 2023, Quinones showcased his latest collection in a fashion show in Manila, Philippines, which featured Araneta-Marcos as a model and was attended by his "A-List clientele."

---

[1] Undesignated statutory references are to the Code of Civil Procedure.

Quinones filed the complaint in this action on March 1, 2024, alleging Contreras defamed him in one of her YouTube videos. Specifically, Quinones alleged a video Contreras posted on June 21, 2023, contained 11 statements about him that were false and defamatory. We will not recite the statements verbatim, but they included that Quinones was a "scammer" and a "fraudster thief" who was "not an actual designer." Contreras accused Quinones of "working as a tandem team" with Araneta-Marcos to take money from the Philippine people by marking up his products "by '100,000%,'" and by buying clothing elsewhere and "'chang[ing] it to [his] name.'" Contreras said "'[Araneta-Marcos] lavishly spends . . . using government funds on this scammer [Quinones] who marks up clothes 500,000% to [Araneta-Marcos] and doesn't even make or design her dresses.'" Quinones alleged those statements were all false and caused him to lose a lucrative contract to design uniforms for a high-profile corporate client.

On June 3, 2024, Contreras filed a motion to strike the complaint pursuant to section 425.16—widely known as an "anti-SLAPP motion." (See *Rusheen v. Cohen* (2006) 37 Cal.4th 1048, 1055.) She argued her statements were protected because they concerned matters of public interest. She also argued Quinones could not show his defamation cause of action had minimal merit for several reasons, including because: he was a limited public figure who could not show she acted with malice; her statements were inactionable opinions; and Quinones's failure to request a retraction precluded him from showing damages.

Quinones moved for limited discovery, including on the issue of Contreras's actual malice. The trial court denied that request.

On June 26, 2024, Quinones filed his opposition to the anti-SLAPP motion. He argued Contreras's statements were not protected within the meaning of the anti-SLAPP law, and he could make out a prima facie showing for each element of defamation. Quinones denied he was a public figure, but argued even if he were, he could adequately show Contreras acted with malice. Quinones simultaneously filed extensive objections to many of the declarations Contreras had submitted in support of her anti-SLAPP motion.[2]

The trial court heard argument on July 10, 2024. First, it granted the parties' evidentiary objections. Second, it concluded Contreras could not show her statements were protected by the anti-SLAPP law because she denied making them. In the alternative, the trial court considered the second step of the anti-SLAPP test and concluded Quinones demonstrated his claims had minimal merit. The trial court determined Quinones was a limited public figure and sufficiently showed Contreras acted with malice. It also determined Contreras's statements were actionable because any opinions therein were based upon false statements or implications of fact. Finally, it determined Quinones adequately showed he was entitled to recover general damages.

The trial court entered its order denying the anti-SLAPP motion on July 10, 2024. Contreras timely appealed. (See Cal. Rules of Court, rule 8.104(a)(1)(B), (e); see also §§ 425.16, subd. (i), 904.1, subd. (a)(13).)

---

[2] Contreras later objected to one paragraph of Quinones's declaration.

4

**DISCUSSION**

## I.  Overview of Anti-SLAPP Principles in the Defamation Context

California's anti-SLAPP statute "provides a procedure for weeding out, at an early stage, *meritless* claims arising from protected activity." (*Baral v. Schnitt* (2016) 1 Cal.5th 376, 384 (*Baral*); see also § 425.16, subd. (b)(1).) A court's analysis of an anti-SLAPP motion proceeds in two steps. (*Baral*, at p. 384.)

"First, the defendant must establish that the challenged claim arises from activity protected by section 425.16." (*Baral*, *supra*, 1 Cal.5th at p. 384.)

Second, if the defendant succeeds, "the burden shifts to the plaintiff to demonstrate the merit of the claim by establishing a probability of success." (*Baral*, *supra*, 1 Cal.5th at p. 384; see also *Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 61.) At that step, the court undertakes "a 'summary-judgment-like procedure' " in which "[i]ts inquiry is limited to whether the plaintiff has stated a legally sufficient claim and made a prima facie factual showing sufficient to sustain a favorable judgment." (*Baral*, at pp. 384–385.) " '[W]e neither "weigh credibility, [nor] compare the weight of the evidence. Rather, [we] accept as true the evidence favorable to the plaintiff [citation] and evaluate the defendant's evidence only to determine if it has defeated that submitted by the plaintiff as a matter of law." ' " (*Oasis West Realty, LLC v. Goldman* (2011) 51 Cal.4th 811, 820, first brackets added.) Any " 'conflicts and inferences in the record [are resolved] in favor of plaintiff.' " (*Monster Energy Co. v. Schechter* (2019) 7 Cal.5th 781, 795.)

In this case, Quinones bears the burden at the second step of showing his defamation cause of action is legally sufficient and

supported by a prima facie factual showing. "The tort of defamation 'involves (a) a publication that is (b) false, (c) defamatory, and (d) unprivileged, and that (e) has a natural tendency to injure or that causes special damage.' " (*Taus v. Loftus* (2007) 40 Cal.4th 683, 720; see also Civ. Code, § 44.) For an alleged defamatory statement to be actionable, it must be a "statement of fact," not "a constitutionally protected statement of opinion." (*Brodeur v. Atlas Entertainment, Inc.* (2016) 248 Cal.App.4th 665, 680; see also *Overstock.com, Inc. v. Gradient Analytics, Inc.* (2007) 151 Cal.App.4th 688, 701.) And if the plaintiff is a public figure, he must also " 'show, by clear and convincing evidence, that the defamatory statement was made with actual malice—that is, with knowledge that it was false or with reckless disregard of whether it was false.' " (*Sanchez v. Bezos* (2022) 80 Cal.App.5th 750, 763, fn. 4.)

"We review de novo the grant or denial of an anti-SLAPP motion." (*Park v. Board of Trustees of California State University* (2017) 2 Cal.5th 1057, 1067 (*Park*).)

## II. The Trial Court Erred in Concluding Contreras's Statements Were Not Protected

The trial court determined Contreras failed to show Quinones's claims arose from her protected activity because she denied she made the statements. We agree with the parties that was incorrect because plaintiff's complaint defines the contours of the claims at this step of the anti-SLAPP analysis. (See *Abir Cohen Treyzon Salo, LLP v. Lahiji* (2019) 40 Cal.App.5th 882, 888 (*Abir*).) Nevertheless, Quinones argues we should affirm on the alternative ground "the defamatory statements regarding Quinones . . . are [not] a public issue or an issue of public interest."

6

The anti-SLAPP statute specifically "define[s] . . . protected acts in furtherance of speech . . . to include a specified range of statements, writings, and conduct in connection with . . . matters of public interest." (*Park, supra*, 2 Cal.5th at p. 1062; see also § 425.16, subd. (e)(1)–(4).) In order to meet her burden on the first element of the anti-SLAPP test, Contreras must "show[] that the acts underlying the plaintiff's cause of action fall within one of the four categories of conducted described in section 425.16, subdivision (e)." (*Nygard, Inc. v. Uusi-Kerttula* (2008) 159 Cal.App.4th 1027, 1036 (*Nygard*).) Contreras argues her statements at issue were protected under either subdivision (e)(3) or (e)(4) of section 425.16.

There is some overlap between those provisions. (See *Sonoma Media Investments, LLC v. Superior Court* (2019) 34 Cal.App.5th 24, 33–34.) Section 425.16, subdivision (e)(3) protects "any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest."[3] (§ 425.16, subd. (e)(3).) Subdivision (e)(4) is

---

[3] Quinones does not dispute his claims against Contreras are based on her "oral statement[s]." (§ 425.16, subd. (e)(3).) Nor does he dispute the comments—posted on YouTube—were made in a public forum. We agree Contreras's statements were made " 'in a place open to the public or a public forum.' " (*Nygard, supra*, 159 Cal.App.4th at p. 1036; see also *Barrett v. Rosenthal* (2006) 40 Cal.4th 33, 41, fn. 4 ["[w]eb sites accessible to the public . . . are 'public forums' "].)

For that reason, Quinones's reliance upon *Weinberg v. Feisel* (2003) 110 Cal.App.4th 1122, 1132–1133 is misplaced. There, the statements were not published in a public forum, and the dispute at issue largely involved "private communications about private matters." (*Id.* at p. 1132; see also *id.* at pp. 1130–

sometimes called "a catchall provision" (*FilmOn.com Inc. v. DoubleVerify, Inc.* (2019) 7 Cal.5th 133, 140 (*FilmOn*)) and protects "any other conduct in furtherance of . . . the constitutional right of free speech in connection with a public issue or an issue of public interest." (§ 425.16, subd. (e)(4).) Both subdivisions (e)(3) and (e)(4) require Contreras to demonstrate her statements "were in connection with a public issue or an issue of public interest." (*Belen v. Ryan Seacrest Productions, LLC* (2021) 65 Cal.App.5th 1145, 1158 (*Belen*); see also § 425.16, subd. (e)(3)–(4).) We conclude they were.[4]

### A.    The Test for Statements Made in Connection with a Matter of Public Interest

Courts apply a two-step test to determine whether speech at issue is made in connection with an issue of public interest. The first step is to "look[] to the content of the speech" and determine "what 'public issue or . . . issue of public interest' the speech in question implicates." (*FilmOn, supra*, 7 Cal.5th at p. 149.[5]) That "step is satisfied so long as the challenged speech . . . ,

---

1132.) That is not the case here, where Quinones admits his interaction with Contreras is limited to her public statements.

[4]    We reject Quinones's unsupported attempt to redefine the test as whether the "defamatory statements are matters of public interest."

    We also reject Quinones's denigration of Contreras's YouTube video as lacking "journalistic integrity." Contreras need not show she was engaged in newsgathering or reporting to be entitled to protection.

[5]    *FilmOn* interpreted the statutory phrase "in connection with . . . an issue of public interest," which appears in both

8

considered in light of its context, may reasonably be understood to implicate a public issue." (*Geiser v. Kuhns* (2022) 13 Cal.5th 1238, 1253 (*Geiser*).)

The second step is to "ask what functional relationship exists between the speech and the public conversation about some matter of public interest," at which stage, "context proves useful." (*FilmOn*, *supra*, 7 Cal.5th at pp. 149–150.) In that regard, " 'it is not enough that the statement refer[s] to a subject of widespread public interest; the statement must in some manner itself contribute to the public debate.' " (*Id.* at p. 150.) The relevant question is "whether a defendant—through public or private speech or conduct—participated in, or furthered, the discourse that makes an issue one of public interest." (*Id.* at p. 151.)

We conclude Contreras has shown her speech furthered the public discourse on matters of public interest.

## B. Contreras's Speech Implicated Matters of Public Interest

Contreras argues political corruption and wasteful government spending are the relevant matters of public interest. Her declaration states she "see[s] the Philippines as a nation with great potential undermined by a legacy of kleptocracy," which is "what led [her] to launch [her] social media platform," Boldyak TV. Her broadcasts "often talk about the corruption,

---

subdivisions (e)(3) and (e)(4). (§ 425.16, subd. (e)(3)–(4); see also *FilmOn*, *supra*, 7 Cal.5th at p. 140.) Thus, to the extent Quinones suggests the case is relevant to interpreting only subdivision (e)(4), we disagree. And in any event, Contreras need only show her statements are protected under one of those subdivisions.

suppression, oppression, and injustice that exists in the Philippines," and have been watched millions of times worldwide.

Moreover, the statements upon which Quinones is suing implicated Quinones in those matters. As Quinones states in his declaration, Contreras "accuse[d] [him] of stealing money from the people of the Philippines by selling clothing . . . to President Marcos, Jr. and [Araneta-Marcos]." In fact, Contreras accused Quinones of fraudulently inflating the prices of the clothing he sells to Araneta-Marcos, which are not even his own designs. When read in context, Contreras's statements imply Quinones is defrauding Marcos, Araneta-Marcos, and by extension, the Philippine people.

Government corruption and wasteful government spending are plainly matters of public interest. (See *Healthsmart Pacific, Inc. v. Kabateck* (2016) 7 Cal.App.5th 416, 430 [kickback scheme involving counterfeit medical hardware and bribery of a state legislator "is undeniably a matter of public concern"]; *MMM Holdings, Inc. v. Reich* (2018) 21 Cal.App.5th 167, 182 [that the "[p]laintiffs allegedly overbilled the government and underpaid their medical providers . . . implicates a public issue or an issue of public interest" because "it involves taxpayer funds"]; *Du Charme v. International Brotherhood of Electrical Workers* (2003) 110 Cal.App.4th 107, 115 [" 'matters of public interest include . . . governmental activities' "].) Quinones does not argue otherwise, nor could he. We construe section 425.16 broadly, and "an issue of public interest is any issue in which the public is interested," even if it is "not . . . significant." (*Belen, supra,* 65 Cal.App.5th at p. 1158 ["the experience of being a model is an issue of public interest"].)

10

Instead, Quinones's main argument is that Contreras's statements were only about "Quinones, his character, and his clothing line," not about government corruption. We disagree with that narrow construction for the reasons discussed above. And in any event, we note statements about business practices are generally considered matters of public interest. (See *Chaker v. Mateo* (2012) 209 Cal.App.4th 1138, 1146 [the plaintiff's "character and business practices plainly fall within in the rubric of consumer information" that is a matter of public interest]; *Abir*, *supra*, 40 Cal.App.5th at p. 888 [business "reviews posted to an Internet website [are] protected activity"]; *GetFugu, Inc. v. Patton Boggs LLP* (2013) 220 Cal.App.4th 141, 151 ["investment scams are a matter of public interest"].)

### C.    Contreras's Speech Furthered the Discourse on the Matters of Public Interest

The next question is how Contreras's statements connect to the matter of public interest. That is, "whether a defendant— through public or private speech or conduct—participated in, or furthered, the discourse that makes an issue one of public interest." (*FilmOn*, *supra*, 7 Cal.5th at p. 151.) Quinones largely ignores that part of the test, instead characterizing it as requiring an examination of the context of the speech. While context is relevant at this stage, it is mainly relevant to determine how the defendant participated in or furthered the discourse that makes the issue one of public interest.

Here, the statements appeared in one of a number of videos posted to Contreras's YouTube channel, in which she generally "talk[s] about the corruption, suppression, oppression, and injustice that exists in the Philippines." Contreras's segments, including the one about Quinones, " 'shed light on [those]

11

subjects' " and "contributed to the issue of public interest" by informing her viewers Philippine government officials were being duped by Quinones into wasting taxpayer money on overpriced designer clothing.[6] (*FilmOn*, *supra*, 7 Cal.5th at p. 153.) That is, the video "served to draw attention" to ostensibly wasteful government spending by Philippine government officials, and thus "furthered public discussion of the public issues it implicated." (*Geiser*, *supra*, 13 Cal.5th at p. 1255.)

For those reasons, we conclude Contreras carried her burden to show Quinones's defamation cause of action arose from her protected activity.

## III. Quinones Demonstrated His Defamation Claims Had Minimal Merit

Because Contreras met her burden on the first step of the anti-SLAPP test, the burden shifted to Quinones to demonstrate his claims had minimal merit. (See *Oasis West Realty, LLC v. Goldman*, *supra*, 51 Cal.4th at pp. 819–820.) The trial court elected to analyze and rule on the second step of the anti-SLAPP inquiry, concluding even if Contreras's activity were protected, her motion should still be denied. As we explain below, while we disagree with some of the trial court's reasoning, its ultimate conclusion was correct. (See *People v. Brown* (2004) 33 Cal.4th 892, 901.)

---

[6]     Quinones cited no evidence supporting his contrary assertion the purpose of Contreras's statements was "to garner views to her YouTube Channel, and in turn, revenue."

### A.     Quinones Is Not a Public Figure

Quinones argues he need not show malice because he is not a limited purpose public figure.[7] We agree.

In a defamation action, there is "a significant constitutional limitation on the ability of [public figures] to recover damages": they must prove the statement at issue was made with malice. (*Reader's Digest Assn. v. Superior Court* (1984) 37 Cal.3d 244, 252–253 (*Reader's Digest*).) There are two types of public figures. "The first is the 'all purpose' public figure who has 'achiev[ed] such pervasive fame or notoriety that he becomes a public figure for all purposes and in all contexts.' The second category is that of the 'limited purpose' or 'vortex' public figure, an individual 'who voluntarily injects himself or is drawn into a particular public controversy and thereby becomes a public figure for a limited range of issues.' "[8] (*Id.* at p. 253.) "[W]hen called upon to make a

---

[7]     The trial court determined Quinones was "at least an involuntary, limited public figure involved in the clothing designing business in connection with high-ranking government officials." Contreras's opening brief essentially restates that holding, but neither cites cases supporting the theory nor develops any argument on that score.

Because Contreras's briefing does not sufficiently raise the issue of an "involuntary public figure," we do not address it further. (See *WFG National Title Ins. Co. v. Wells Fargo, N.A.* (2020) 51 Cal.App.5th 881, 894–895 ["we may disregard conclusory arguments"]; cf. *Khawar v. Globe Intern., Inc.* (1998) 19 Cal.4th 254, 263 [" 'the instances of truly involuntary public figures must be exceedingly rare' "].)

[8]     Neither party suggests Quinones is an all purpose public figure. We therefore do not consider that issue. (See *Pfeifer v.*

---

determination of public figure status, courts should look for evidence of affirmative actions by which purported 'public figures' have thrust themselves into the forefront of particular public controversies." (*Id.* at pp. 254–255.)

Contreras and Quinones generally agree on the applicable three-element test governing whether an individual is a limited purpose public figure. " 'First, there must be a public controversy, which means the issue was debated publicly and had foreseeable and substantial ramifications for nonparticipants. Second, the plaintiff must have undertaken some voluntary act through which he or she sought to influence resolution of the public issue.' " (*Bui v. Ngo* (2024) 101 Cal.App.5th 1061, 1073 (*Bui*), quoting *Ampex Corp. v. Cargle* (2005) 128 Cal.App.4th 1569, 1577.) Third, " 'the alleged defamation must be germane to the plaintiff's participation in the controversy.['] " (*Bui*, at p. 1073, quoting *Ampex*, at p. 1577.)

Viewing this record in favor of Quinones (see *Monster Energy Co. v. Schechter*, *supra*, 7 Cal.5th at p. 795), Quinones is not a limited purpose public figure under that test.

### 1. Issues of Government Corruption and Wasteful Spending Are Public Controversies

For present purposes, we generally agree with Contreras the public controversy here "is the misuse of government funds."[9]

---

*Countrywide Home Loans, Inc.* (2012) 211 Cal.App.4th 1250, 1282 (*Pfeifer*).)

[9] However, we disagree with Contreras's broader contention "the public controversy is the misuse of government funds to purchase designer gowns from a well-known designer who had a

14

That is, for many of the same reasons as we discussed in part II.B., *ante,* government corruption and wasteful government spending by Philippine government officials is a public controversy, debated publicly, that has substantial ramifications for the general public.

### 2. Quinones Did Not Act to Influence the Resolution of Any Public Controversy

However, nothing in this record suggests Quinones acted to influence the resolution of that public controversy. In considering this element of the test, " 'courts should look for evidence of affirmative actions by which purported "public figures" have thrust themselves into the forefront of particular public controversies.' " (*Copp v. Paxton* (1996) 45 Cal.App.4th 829, 845.) In that regard, "it is sufficient that '[a plaintiff] attempts to thrust himself into the public eye' [citation] or to influence a public decision." (*Id.* at pp. 845–846, second brackets added.)

Contreras argues Quinones "thrust himself back into the public eye" by "putting on public fashion shows; having his work acquired by a world-class museum; designing for celebrity clients and high ranking government officials; and showcasing his body of work at famed venues." The record reflects Quinones enjoyed some prominence arising from his fashion business and his profession as a designer. But that does not show he thrust himself "into the vortex" of a public controversy regarding wasteful spending by the Philippine government—which is the

---

past of improper business practices." This record contains no evidence of an existing public controversy involving Philippine government spending on designer clothing, let alone one involving Quinones. (See *Carver v. Bonds* (2005) 135 Cal.App.4th 328, 354 (*Carver*).)

15

relevant controversy here. (*Vegod Corp. v. American Broadcasting Companies, Inc.* (1979) 25 Cal.3d 763, 769 (*Vegod*); see *Reader's Digest, supra*, 37 Cal.3d at pp. 254–255.)

That is, there is no evidence Quinones publicly spoke out about spending by Philippine government officials, wasteful or otherwise, or attempted to influence public decisions on that issue.(See *Vegod, supra*, 25 Cal.3d at p. 769.) Rather, Quinones sought public attention in the course of promoting his business. That does not render him a limited purpose public figure with regard to the issue of wasteful government spending, notwithstanding some of his clients were government officials. (See *id.* at pp. 766, 769 [the plaintiffs did not become public figures merely "by selling goods to the public and by advertising the sale"]; see also *Carver, supra*, 135 Cal.App.4th at pp. 353–354 [plaintiff doctor was not "a public figure for purposes of statements accusing him of false advertising"].)

Because there is no evidence Quinones had made comments about a public debate or controversy, Contreras's reliance on cases in which the plaintiffs did make comments of that nature is misplaced.[10] (See *Reader's Digest, supra*, 37 Cal.3d at pp. 255–

---

[10] Even further afield are cases arising in unique factual circumstances not present here. (See *Stolz v. KSFM 102 FM* (1994) 30 Cal.App.4th 195, 204–205, 207 [plaintiff radio station owner was public figure regarding operation of radio station, which was itself all purpose public figure]; *Widener v. Pacific Gas & Electric Co.* (1977) 75 Cal.App.3d 415, 433 [the plaintiff effectively conceded he was a public figure], disapproved on other grounds by *McCoy v. Hearst Corp.* (1986) 42 Cal.3d 835, 846, fn. 9; *McGarry v. University of San Diego* (2007) 154 Cal.App.4th 97, 102 ["professional and collegiate athletes and coaches are at least limited purpose public figures"].)

256 [the plaintiff "sent out at least 960 letters to the media . . . , arguing its case and intentionally attracting further attention to its cause," among other efforts]; *Gilbert v. Sykes* (2007) 147 Cal.App.4th 13, 25 (*Gilbert*) [plastic surgeon thrust himself into public debate on plastic surgery by making numerous press appearances "touting the virtues of cosmetic and reconstructive surgery"].)

This record contains no evidence Quinones thrust himself into any public debate regarding government corruption or wasteful government spending in the Philippines. He did not "place[] himself in the spotlight on [that] topic of public interest," and therefore, he is not a limited purpose public figure. (*Gilbert*, *supra*, 147 Cal.App.4th at p. 25.)

### 3. Quinones Need Not Establish Contreras Acted with Malice

Because we conclude, on this record, Quinones was not a limited purpose public figure, he did not need to show Contreras acted with malice in making her statements about him. (See *Bui*, *supra*, 101 Cal.App.5th at p. 1078.) We therefore do not consider whether the trial court erred in concluding Quinones adequately showed malice.

### B. Contreras's Statements Are Actionable

Contreras's second line of attack on the trial court's denial of her anti-SLAPP motion is that her statements were merely opinions, and "[o]pinions are not actionable." "Th[at] is an oversimplification." (*Dickinson v. Cosby* (2017) 17 Cal.App.5th 655, 685 (*Dickinson*).) On the contrary, a statement of opinion is actionable if it " 'impl[ies] a false assertion of fact,' " which occurs when " 'the speaker states the facts upon which he bases his

17

opinion [and] those facts are either incorrect or incomplete, or . . . his assessment of them is erroneous.' " (*Ibid.*)

A court examines the totality of the circumstances to determine " ' " " 'whether a reasonable fact finder could conclude the published statement declares or implies a provably false assertion of fact.' " ' " (*Dickinson, supra*, 17 Cal.App.5th at p. 686.) "First, we examine the language of the statement itself," which involves "considering whether the statement was cautiously phrased in terms of the author's impression." (*Ibid.*) It also involves "look[ing] at whether the purported opinion discloses all of the facts on which it is based and does not imply that there are other, unstated facts which support the opinion"; if so, "the statement is defamatory only if the disclosed facts themselves are false and defamatory." (*Ibid.*) "Second, we examine the context in which the statement was made," including: "the audience to whom the statement was directed [citation], the forum in which the statement was made [citation], . . . the author of the statement," and " 'whether the statements were made by participants in an adversarial setting.' " (*Id.* at pp. 686–687.)

Contreras argues that her statements "Quinones is a 'scammer' and 'fraudster'; exercises improper influence over [Araneta-Marcos]; inflates the prices and overcharges for his products[;] and is not a 'real' nor a 'world-class' fashion designer are inactionable opinions because those are exaggerated and hyperbolic expressions and subjective judgment opinions." We do not agree.

18

### 1. We Consider Contreras's Statements in Context and as a Whole

Contreras argues, without citation, the trial court should have evaluated each statement individually. But " '[d]efamation actions cannot be based on snippets taken out of context.' " (*Balzaga v. Fox News Network, LLC* (2009) 173 Cal.App.4th 1325, 1338.) Well-settled California law provides " ' "[t]he publication in question must be considered in its entirety" ' " and should " ' " 'not be divided into segments and each portion treated as a separate unit.' " ' " (*Baker v. Los Angeles Herald Examiner* (1986) 42 Cal.3d 254, 261.)

Therefore, we consider the statements as a whole and in context.

### 2. The Language of the Statements

The language of Contreras's statements shows they are actionable. First, we note none of Contreras's statements included cautionary language suggesting they were mere statements of personal opinion. That weighs against concluding they are nonactionable opinions. (See *Dickinson*, *supra*, 17 Cal.App.5th at p. 687 [demand letter was "not phrased cautiously in terms of opinion"].)

Second, Contreras did not merely call Quinones a fraud or a scammer. She made other statements setting forth various "underlying factual bases" for those assertions. (*Dickinson*, *supra*, 17 Cal.App.5th at p. 688.) That is, Contreras said Quinones: was "over-pricing pieces that [he] got from third-party vendors and switching tags and claiming it as if it's [his]"; "just bought at Santee stores and change[d] it to [his] name"; marks up his goods by " '100,000%' " by " 'buy[ing] it for $2,000 and sell[ing] it for $200,000' "; and " 'marks up clothes 500,000% to [Araneta-

19

Marcos] and doesn't even make or design her dresses.' " Quinones presented evidence those underlying statements are false. "An opinion based on a provably false fact is itself actionable." (*Ibid.*)

Therefore, the language of the statements indicates they are actionable.

### 3. The Context of the Statements

"[O]ur analysis of the language of the [YouTube video] alone is sufficient to establish a reasonable fact finder could conclude [it] conveys a provably false assertion of the fact," so we need not analyze the context of the statements in detail. (*Dickinson*, *supra*, 17 Cal.App.5th at p. 689.) Nonetheless, we reject Contreras's argument her statements are not actionable as a matter of law because they were "made in a political context." Quinones is a fashion designer, not a political candidate "seek[ing] redress for a political advertisement . . . during a heated election campaign." (*Issa v. Applegate* (2019) 31 Cal.App.5th 689, 704.)

### C. Quinones's Claims Do Not Fail for a Lack of Damages

Contreras's final argument is that Quinones's claim for damages must be stricken because he failed to request a retraction under Civil Code section 48a. That section "requires a plaintiff, in order to recover general damages, to serve a retraction demand." (*Anschutz Entertainment Group, Inc. v. Snepp* (2009) 171 Cal.App.4th 598, 640.) By its terms, section 48a applies to "libel in a daily or weekly news publication, or . . . slander by radio broadcast." (Civ. Code, § 48a, subd. (a); see also *id.,* subd. (d)(5) [defining " '[d]aily or weekly news publication' "]; Civ. Code, § 48.5, subd. (4) [defining " 'radio broadcast' "].) The parties dispute whether the trial court correctly determined

section 48a does not apply to YouTube videos like the one at issue here.

We need not resolve that dispute because even assuming (without deciding) Civil Code section 48a applies, the record shows Quinones requested a retraction on December 1, 2023. In the trial court, Contreras argued that request was untimely, but she has not renewed that argument on appeal. (See § 48a, subd. (a) [notice should be served "within 20 days after knowledge of the . . . broadcast of the statements"].) It is therefore forfeited. (See *Turrieta v. Lyft* (2024) 16 Cal.5th 664, 697; *Pfeifer*, *supra*, 211 Cal.App.4th at p. 1282.)

## DISPOSITION

The judgment is affirmed. Quinones is entitled to costs on appeal. (See Cal. Rules of Court, rule 8.278(a)(1)–(2).)


RICHARDSON, J.


WE CONCUR:


LUI, P. J.


GOORVITCH, J.*

---

*     Judge of the Superior Court of Los Angeles County, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.